UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 12-79-KKC

UNITED STATES OF AMERICA,                                                                           PLAINTIFF,

V.                             **MEMORANDUM OPINION & ORDER**

MARK EDMOND BROWN, JR. (4),                                                                       DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

Pending before the court is defendant Mark Edmond Brown's motion to suppress (R. 384). Brown seeks to suppress two cell phones and the evidence derived from them. One phone was seized from Brown's black pick-up truck on February 19, 2012, and the other from his person following his arrest on April 17, 2012. An evidentiary hearing was held in this matter and the court heard testimony from a security guard stationed at the Tolly-Ho restaurant on February 19, 2012, three members of the Lexington Police Department, and Special Agent Rob Maynard from ATF. For the following reasons, the court will deny in part and grant in part defendant's motion to suppress.

## BACKGROUND

On January 14, 2012, Lexington police approached a black Ford F-450 pick-up truck which was parked near the Tolly-Ho restaurant in Lexington, Kentucky. (R. 384, Ex. 2 at 4). Mark Brown was seated in the driver's seat and Chasmagic Lawton in the passenger's seat. Police found two firearms in the vehicle, which were returned to Brown after police ascertained that the guns weren't stolen. The very next day, police recovered a firearm from a fleeing felon. They later learned that the firearm belonged to Brown. When questioned about the firearm, Brown told police that the firearm had been stolen from him at a party. Days later, on January

1

19, 2012, a search warrant was executed on a black Cadillac Deville, which police believed belonged to Brown. (*Id*. at 8) In the Deville, the police found two Marijuana cigarettes, a digital scale, and various receipts linked to Brown.

On February 14, 2012, a federal arrest warrant was issued for Chasmagic Lawton, who was charged with being a felon in possession of a firearm.[1] In the ordinary course of business, Lexington Police officers were informed of the warrant and told to be on the lookout for Lawton. At the evidentiary hearing on Brown's suppression motion, Sergeant Matthew Greathouse testified that during the events of February 19, 2012, the police department's "main goal" was to find Chasmagic Lawton, who only days before, had fired shots at officers as they pursued him. (R. 445 at 59-62)

During the early morning hours of February 19, 2012, a private security guard, Eric Schwartz, was stationed at the entrance of the Tolly-Ho restaurant in Lexington, Kentucky. (R. 445 at 4) Schwartz, who was familiar with Brown and Lawton, testified that the two men were waiting in line to enter the restaurant when an argument broke out in the parking lot. As the argument escalated, Schwartz called the police. Schwartz testified that when police sirens came within earshot, Brown and Lawton "briskly" left the scene. On the way to the parking lot, however, Brown shoved Schwartz and asked "Why do you always have to call the police?" (R. 445 at 10) When police officers arrived at the Tolly-Ho, Schwartz told them he had just seen Brown and Lawton depart in a black pickup truck.

Within minutes of the police dispatch to the Tolly-Ho, Officer David Bradley observed Brown's distinctive black pickup truck at a Speedway gas station near the restaurant. When he pulled into the Speedway station, Bradley saw police officers with weapons drawn and heard

---

[1] Lawton ultimately pled guilty to this offense in a separate case *United States v. Lawton*, 5:12-CR-49 and is currently serving this prison term.

2

them ordering Brown to get out of the truck. Officer Bradley said that Brown ignored the officers' orders and stayed in the driver's seat of his truck while "doing something on his phone." (R. 445 at 34-37)  Bradley testified that, at the time, he didn't know if Lawton was in the truck with Brown or if he was possibly hiding in the vicinity of the gas station. Because Lawton was believed to be armed and dangerous, Bradley was concerned for the physical safety of everyone on the scene.   All the while, Brown continued to ignore officer's commands to get out of the truck and remained inside with his head down. Ultimately, Bradley forcibly pulled Brown from the truck at which time Brown then became "very belligerent . . . yelling and cussing and screaming and trying to make a great big huge scene." (*Id*. at 38)  In order to control Brown, the officers placed him in handcuffs and leg restraints. After officers determined that Lawton wasn't inside Brown's truck, they took possession of Brown's cell phone which had been dropped near the driver's seat when Brown was pulled from the truck.

     Sergeant Matthew Greathouse was also on the scene at the Speedway on February 19, 2012.  Greathouse described the Speedway scene as crowded with multiple police officers surrounding Brown's parked truck. Like Bradley, Greathouse saw Brown doing something on his phone while ignoring the verbal commands of the officers. He also observed Brown's combative behavior and was concerned that Brown was creating a diversion to distract police from Lawton, whose whereabouts remained unknown. Greathouse testified that at or about the time Brown was arrested, he retrieved Brown's phone from inside the truck and looked at its contents for any information that would assist the police in locating Lawton. (R. 445 at 72). Greathouse said, however, that he was unable to "make heads or tails" of the information on the phone and that he gave the phone to a fellow officer and instructed him to write down the contact information stored in the phone so that he could "pass them to ATF." (*Id*. at 75)

Detective Randall Combs responded to the call at the Tolly-Ho before going to the aid of officers at the Speedway, which was only a short distance away.  The security guard at the Tolly-Ho told Combs that both Brown and Lawton had just left the restaurant in Brown's black pick-up truck.  Combs testified that at that time, he believed that Brown and Lawton were "armed."  (R. 445 at 106)  Once he arrived at the Speedway,  Combs and other officers searched the Speedway building to make certain that Lawton wasn't hiding inside.  Combs testified that at some point thereafter, Sergeant Greathouse handed him Brown's cell phone and instructed him to "write down the contact information."  Combs then went back to his cruiser, got out a notepad, and wrote down the contact information and phone numbers.  *See* R. 444, Ex. 1 (handwritten contact list). Brown's cell phone was not booked into evidence and was later returned to him.  Combs testified that he could not recall any specific instructions to review or record either the call history or text messages on Brown's cell phone.  (R. 445 at 115)

Special agent Rob Maynard with ATF also appeared and testified at the hearing.  Maynard stated that he received the handwritten contact list copied from Brown's cell phone on February 23, 2012 from the Lexington police department.  He recognized one contact listed under the name "Bra-Bra," who was later identified as Chasmagic Lawton.  (R. 445 at 118).

On April 17, 2012, Brown was arrested on a federal arrest warrant.  Agent Maynard assisted in the arrest and testified that a cell phone taken from Brown incident to the arrest was booked into evidence on the same date.  Maynard testified that in the days that followed, Maynard's schedule was filled with related activities including booking, an initial court appearance, drafting a report, and a detention hearing.  Also, Maynard was required to prepare for trial in an unrelated case in Arizona.  (*Id*. at 122-23) Because of these events, ten days elapsed before Maynard submitted the application for a warrant to search the IPhone seized from

Brown on April 17, 2012.  After the warrant was issued, Maynard encountered a number of difficulties and delays in retrieving the electronic contents from Brown's Iphone, which was password protected.  Ultimately, Maynard had to apply to Apple, Inc. for assistance in unlocking Brown's phone, which took so much time that a second warrant was secured.  From this IPhone, Maynard found a contact listed as "Bra Bra," several text messages between Brown and "Bra Bra," and a contact identified as "Mag's Mom," who he believed was Chasmagic Lawton's mother.  (*Id*. at 140-141).

## DISCUSSION

Brown argues the cell phone in his truck on February 19, 2012 was seized unlawfully.  He also maintains that in copying down the contact list, officers exceeded the bounds of the Fourth Amendment.  Brown also seeks to suppress the contents of the Apple IPhone seized incident to his arrest on April 17, 2012 on the grounds that the delay in obtaining the search warrant was unreasonable.

### Cell Phone #1

The court is persuaded that the police had probable cause to seize and initially search Brown's cell phone on February 19, 2012, as part of a valid search incident to arrest.  Although the Fourth Amendment generally prohibits warrantless searches, in the case of a lawful custodial arrest, a full search without a warrant is permissible if the police have probable cause to believe the vehicle contains evidence of a crime.  *United States v. Galaviz*, 645 F.3d 347, 354-55 (6th Cir. 2011).  The Supreme Court has further clarified that during a search incident to arrest the police may search a vehicle only "if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

A search incident to arrest is lawful "so long as the defendant had the item within his immediate control near the time of his arrest[.]" *United States v. Romero*, 452 F.3d 610, 619 (6th Cir. 2006). The purpose of this exception is not only to protect arresting officers but also to safeguard evidence. *Gant*, 556 U.S. at 339. A warrantless search incident to arrest is justified by exigent circumstances including hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, or risk of danger to police or others. *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005). At the time of the incident at the Speedway, police had a warrant for Chasmagic Lawton, who had reportedly left the Tolly Ho only moments before in Brown's black pick-up truck. When police arrived at the nearby Speedway, they could see Brown in the driver's seat, but Lawton was nowhere to be seen. Moreover, Brown ignored police commands to exit the truck while visibly manipulating a cell phone. Officers testified that Chasmagic Lawton had fired shots at officers who had pursued him in the past and that they feared Brown was using his phone to destroy evidence while either hiding Lawton in the truck or helping him escape. At least one officer testified as to his concern that Brown might be using the phone to help Lawton set up an ambush or to harm members of the public in or around the Speedway station. Finally, when police forcibly pulled a combative Brown from his truck, they found the phone on the console inside the truck next to where Brown had been seated. Here, police were justified in the initial warrantless search of Brown's phone to prevent the destruction of evidence, to prevent a suspect's escape and to avoid risk of danger to police or others.

The court finds, however, that based on the unique facts of this case, the police officers went too far in copying down Brown's contacts after Brown was taken into custody. The validity of the search ceased the moment that Sergeant Greathouse determined that he could not "make heads or tails" of the information on the phone or initially glean the whereabouts of

6

Chasmagic Lawton, which he testified was the focus of the police activity that evening. Officer Combs testified that Greathouse's only instruction was to "write down the contact list." Combs didn't recall being asked to record recent phone calls or texts that might have helped to ascertain Lawton's immediate whereabouts. Greathouse was asked only to record Brown's contact list, which shed no light on Lawton's immediate location. Once it became clear to police that Brown's phone provided no information as to Lawton's whereabouts, exigent circumstances supporting further warrantless inquiry ceased to exist.

The cessation of exigent circumstances is further supported by Greathouse's testimony "[t]hat information was gathered for the purposes of forwarding [it] to ATF so they could further their investigation. It was not for me or our division, it was for the ATF to further theirs." (R. 445 at 89). Because warrantless searches are presumptively unreasonable under the Fourth Amendment, the government bears a "heavy burden" of proving exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984). Once the officers determined that no helpful information was readily available on Brown's phone, further inquiry was not supported by exigent circumstances. At that point, the officers could and should have sought a warrant before sifting through any additional information stored on the phone such as the cryptic contact list at issue in the instant case. This reasoning is in accord with other cases in which courts have found that it is impermissible to engage in a "general rummaging in order to discover incriminating evidence." *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (holding police officers not permitted to search a locked suitcase in the trunk of vehicle); *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008)(finding police officers not permitted to open and search a cell phone without probable cause and manipulate it looking for a phone number during an investigative vehicle stop of an

7

individual suspected of drug trafficking). This case requires the court to draw a fine distinction based on the evolving facts and circumstances unique to this incident.

### Cell Phone #2

The court is not persuaded by Brown's argument that the delay in obtaining a search warrant for the Apple Iphone was unreasonable. Agent Maynard testified that because of other demands of this particular case and another unrelated trial, he waited ten days before submitting an application for a search warrant to a United States Magistrate Judge on April 27, 2012. The warrant was issued by the magistrate judge, but not until May 3, 2012. The court finds that the ten day delay in submitting an application for the search of the cell phone was reasonable given the circumstances related to this investigation and the absence of any evidence of bad faith on the part of the government. More importantly, the defendant cites no binding authority in support of his argument that Maynard's delay in seeking a warrant requires suppression of the evidence.

A second search warrant was issued for this phone in October 2012. At the evidentiary hearing, the defendant suggested that the delay from the initial warrant signed on May 3, 2012, to the subsequent October application and warrant was also unreasonable. However, Agent Maynard explained that the Apple Iphone was password protected and couldn't be opened. Agent Maynard contacted Apple to obtain assistance in unlocking the device and was placed on a waiting list by the company. Ultimately, in order to facilitate the acquisition of information, Maynard testified that he sought a second, more detailed search warrant that he mailed to Apple in order to assist in its retrieval of information from the phone. To the extent that the defendant argues that this delay was unreasonable, the court finds nothing in the record to demonstrate any evidence of bad faith or unnecessary delay in procuring assistance from Apple to unlock the phone.

Finally, the Court notes that the suppression of the contact list obtained from Brown's phone on the night of February 19, 2012, does not invalidate the search and seizure of the second Apple Iphone obtained from Brown's person in April 2012. While references to the contact list or evidence derived therefrom such as that listed in ¶36 of the October 2012 affidavit indeed must be suppressed as fruit of the poisonous tree, the court notes that ¶36 is merely one paragraph in a twenty-page affidavit that, if excised from the affidavit, would not invalidate that search warrant or any evidence derived from the second Apple Iphone validly seized incident to Brown's arrest in April 2012.

For the reasons set forth above,

**IT IS ORDERED** that the defendant's motion to suppress (R. 384) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 20th day of March, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge