## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

**CRIMINAL NO. 12-cr-79-KKC-CJS**
**CIVIL ACTION NO. 14-cv-7341-KKC-CJS**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**v.**                         **REPORT AND RECOMMENDATION**

**MARK EDMOND BROWN, JR.**                                              **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

On April 5, 2013, Defendant Mark Edmond Brown, Jr. pleaded guilty, pursuant to a written Plea Agreement, to conspiracy to distribute 500 grams or more of cocaine but less than 5 kilograms. After being sentenced within his Sentencing Guideline range, Brown filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. (R. 886). In his Motion, Brown asserts that his guilty plea was not voluntary, his counsel provided him with ineffective assistance, and the Government deliberately violated his constitutional and statutory rights to a speedy trial. (*Id.*). The United States filed a Response to Defendant's § 2255 Motion, to which Brown filed a Reply. (R. 929, 949).

One of Brown's claims of ineffective assistance of counsel is based upon his retained counsel's alleged failure to file a notice of appeal despite his request that one be filed. (*Id.*). The Court ordered the Government to further investigate certain factual information regarding Brown's claim of ineffective assistance stemming from counsel's alleged failure to file a notice of appeal and directed the Government to file an appropriate notice of its findings (R. 960). The Government thereafter filed a Supplemental Response to Brown's § 2255 Motion, which included a Supplemental

Affidavit of R. Tucker Richardson, III, Brown's retained trial counsel in this matter.  (R. 964).

Finding the filings revealed a factual dispute, the Court appointed Attorney Mark A. Flores as

counsel for Brown on his claim of ineffective assistance of counsel for failure to file a notice of

appeal, and on March 11, 2015, the Court held a limited evidentiary hearing on this claim.[1]  (R.

1030; R. 1066; R. 1100).   On May 20, 2016, Attorney Flores was permitted to withdraw, and

Attorney Richard Melville was appointed to represent Brown on this claim.  (R. 1191).

Having considered the record and the evidence presented at the evidentiary hearing, Brown's

Motion is ripe for the issuance of a Report and Recommendation.  28 U.S.C. § 636(b).  For the

reasons set forth below, it will be recommended that Brown's § 2255 Motion be **denied**.

## I.   BACKGROUND

On April 11, 2012, a federal grand jury returned an indictment charging Brown in case

number 5:12-cr-41 with possession of a firearm while under a Tennessee indictment for a felony.

On August 16, 2012, a federal grand jury returned a 25-count Superseding Indictment naming 11

Defendants in the instant action, 5:12-cr-79, including Brown.[2]  (R. 20).   After the Second

Superseding Indictment was returned in the instant case (R. 179), the Court dismissed, on the

Government's motion and without objection from Brown, the Indictment against Brown in 5:12-cr-

41.  (*See Brown*, No. 5:12-cr-41, at ECF No. 34).  The Fourth, and final, Superseding Indictment in

---

[1]While Brown requested an evidentiary hearing on all claims, the Court limited the hearing only to the issue of whether he expressly directed his trial counsel to file a notice of appeal.  (R. 886-1, at 17-18; R. 1019; R. 1029).  As explained further herein, an evidentiary hearing on his other claims is not mandated nor necessary.

[2]The original Indictment in case number 5:12-cr-79 named only two Defendants: Charles Jones and Dominico Morbley.  (R. 1).  Brown and nine others were first named in this action via the First Superseding Indictment, which also named Morbley as a Defendant but did not name Jones.  (R. 20).

the instant case (R. 472) charged Brown in 5 of the 15 counts, including charges for conspiracy to distribute 280 grams or more of crack cocaine, conspiracy to distribute 5 kilograms or more of cocaine, possession with intent to distribute crack cocaine, concealing a person from arrest and making false statements to a federal agent, as well as forfeiture allegations.

On April 5, 2013, pursuant to a written Plea Agreement, Brown pleaded guilty to a lesser included offense of Count 2 of the Fourth Superseding Indictment, conspiracy to distribute 500 grams or more of cocaine but less than 5 kilograms, and the Government agreed to move to dismiss the remaining counts at the time of sentencing. (R. 569, 570, 873). In the Plea Agreement, the parties acknowledged that the statutory punishment for the lesser included offense to which Brown was pleading guilty required a mandatory minimum sentence of 5 years of incarceration and carried a statutory maximum term of imprisonment of 40 years. (R. 570, at ¶ 4; R. 873, at 15). The Plea Agreement also contained the parties' nonbinding recommendations for the calculation of Brown's Sentencing Guideline range, including a recommendation that the base offense level be found to be 30 and that Brown receive up to a 3-level reduction for acceptance of responsibility. (R. 570, at ¶ 5). The parties also agreed that Brown would not seek a decrease of his offense level for having a mitigating role, nor would he file a motion for departure under Chapter 5, Parts H or K of the Guidelines. (*Id*.). The parties did not agree on Brown's criminal history category.

The Plea Agreement further provided that Brown waived his right to appeal and his right to collaterally attack his guilty plea, conviction and sentence, except that he reserved his right to appeal a sentence greater than 108 months. (R. 570, at ¶ 8). The presiding District Judge engaged Brown in a plea colloquy, and she found his plea to be voluntary and supported by an independent basis in fact. (R. 873, at 19). Thus, the presiding District Judge accepted Brown's plea of guilty. (*Id*.).

3

On August 15, 2013, Brown appeared for sentencing. (R. 717; R. 872). At sentencing, the presiding District Judge noted that Brown did not pose any objection to the Presentence Investigation Report (PSR) that impacted the Guideline calculations, and she adopted the factual findings and Guideline calculations contained in the PSR.[3] (R. 872, at 3). Specifically, Brown was found to have an offense level of 27, which was consistent with the recommendation in the Plea Agreement, and a criminal history category of III. Thus, Brown's advisory Guideline range was 87 to 108 months.

In rendering her decision on an appropriate sentence, the presiding District Judge noted that given the nature of Brown's criminal history and the seriousness of this crime, she would ordinarily consider an upward variance under such circumstances and sentence a defendant above the Guideline range. (R. 872, at 13). However, after considering Brown's statements of allocution, the arguments of counsel, and the opportunity for Brown to turn his life around given his young age, the presiding District Judge concluded that a within Guidelines sentence was sufficient but not greater than necessary to achieve the objectives of the sentencing statute. (*Id.*). Accordingly, the District Court sentenced Brown to a 108-month term of incarceration with a 5-year term of supervised release to follow.[4] (*Id.*).

In addition, the presiding District Judge instructed the Clerk of Court to advise Brown of his right to appeal, and Brown and his counsel signed the Court's Advice of Right to Appeal form that

---

[3]Brown's Objections related to the Probation Officer's assessment of his ability to pay a fine and the paragraphs in the PSR setting forth factors that may permit consideration of a sentence above the Guideline range. The District Court did not impose a fine or a sentence above the Guideline range.

[4]On May 19, 2015, the presiding District Judge granted Brown's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2), and reduced his term of imprisonment from 108 months to 87 months. (R. 1084).

set forth Brown's appellate rights. (R. 719; R. 872, at 17-18). Brown was provided a copy of this form. (*Id*.). A notice of appeal was not filed.

On March 25, 2014, Brown filed the pending § 2255, asserting three grounds for relief: 1) his counsel provided him ineffective assistance, which resulted in an involuntary and unknowing plea, by failing to review discovery with him, failing to conduct an independent investigation into the evidence, advising him to plead guilty to a crime the evidence did not support, and relaying threats from the prosecutor that his mother would be indicted if he did not plead guilty; 2) his counsel provided him ineffective assistance by failing to file a notice of appeal despite his directive to counsel that one be filed; and 3) he was denied due process and the effective assistance of counsel by the Government's repeated filing of superseding indictments as a delay tactic in violation of his speedy trial rights, without objection from his counsel, while it built its case against Brown and coerced him to plead guilty by threatening action against his mother. (R. 886-1).[5]

## II.   ANALYSIS

To obtain habeas relief under 28 U.S.C. § 2255, Brown must demonstrate that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A § 2255 motion does not have to be founded on constitutional error or even federal law.  *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006)).  However, to succeed on a § 2255 motion alleging

---

[5]For ease of discussion, Brown's claims in Ground Three will be analyzed below in two sections. Specifically, his ineffective assistance of counsel claim will be separated from his due process and Speedy Trial Act claims and discussed in the section involving Brown's other claims of ineffective assistance of counsel.

constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

In sum, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). In addition, a motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). When a defendant files a § 2255 motion, he must set forth facts entitling him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (collecting cases). Rule 2 of the Rules Governing § 2255 Proceedings For The United States District Courts requires that the motion, among other things, "specify all grounds for relief available to the moving party" and "state the facts supporting each ground."

6

### A.    Ineffective Assistance of Counsel Claims

All three grounds asserted by Brown allege various claims of ineffective assistance of counsel.  The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To meet this standard, the Court set forth a two-part test.  First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88.  In reviewing this prong, the lower court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94.  Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Defendant must establish both prongs by a preponderance of the evidence. *Pough*, 442 F.3d at 964.  Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Id*. at 691.

In the context of a guilty plea, where a defendant is represented by counsel and enters a guilty plea upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  While the deficient performance prong of the *Strickland* test remains the same, to establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (quoting *Hill*, 474 U.S. at 58-59). Both prongs of the test must be met before a court finds ineffective assistance, but courts are not required to conduct an analysis under both. *Strickland*, 466 U.S. at 697. If the court finds a defendant cannot meet one prong, it need not address the second prong. *Id.*

### 1.    Counsel's Performance did not Render Brown's Plea Unknowing or Involuntary

In Ground One, Brown asserts that his retained trial counsel, R. Tucker Richardson, III, provided ineffective assistance, which led to an unknowing and involuntary entry of a guilty plea. Specifically, Brown argues that counsel coerced him to plead guilty by: 1) failing to review discovery with him; 2) failing to properly investigate the case; 3) advising him to plead guilty to a crime the evidence did not support; and 4) telling him that the Government intended to charge his mother with a crime if he did not plead guilty.

Here, the totality of the circumstances supports a finding that Brown's plea was knowing and voluntary. Brown had the benefit of counsel during the plea process and the rearraignment proceeding and, upon inquiry, he stated under oath that he was satisfied with counsel's representation and advice. (R. 873, at 3, 9-10). The District Court advised Brown of the constitutional rights he was giving up by pleading guilty, the statutory maximum term he faced, and the terms of the Plea Agreement and its consequences, including that the Court was not bound by the recommendations contained in the Agreement. (*See* R. 873). Brown stated he understood the terms of the Plea Agreement, and told the presiding District Judge that no one had threatened him, made any promises to him or in any way coerced him into signing the Plea Agreement. (*Id*. at 10, 18). Brown admitted

to the factual basis provided in his Plea Agreement and admitted his guilt to the lesser included offense of Count 2 of the Fourth Superseding Indictment.  (*Id*. at 10, 14-15, 19).

The District Court was careful in its questioning of Brown to make sure his plea was knowing and voluntary as evidenced from the following colloquy:

| | |
|---|---|
| COURT: | Mr. Brown, your lawyer has placed before you two documents.  One is called a plea agreement, and the other is called a sealed supplement.  Do you recognize those documents? |
| DEFENDANT: | Yes, Ma'am. |
| COURT: | Have you reviewed them carefully with Mr. Richardson? |
| DEFENDANT: | Yes, Ma'am. |
| COURT: | Are you happy with the advice and counsel Mr. Richardson's given you? |
| DEFENDANT: | Yes, Ma'am. |
| COURT: | Has he explained both of these documents to you? |
| DEFENDANT: | Yes, Ma'am. |
| COURT: | Do you understand all of the terms and conditions of both documents? |
| DEFENDANT: | Yes, Ma'am. |
| COURT: | Has anybody tried to threaten you or force you or in any way coerce you into signing those plea agreements - - or both of those agreements [before] coming before this Court to plead guilty? |
| DEFENDANT: | No, ma'am. |
| COURT: | Are you willing to plead guilty today because you committed the crime identified in Count 2 of the fourth superseding indictment? |

> DEFENDANT:          Yes, ma'am.

(R. 873, at 9-10).  The Court again confirmed no other promises had been made to Brown in exchange for his guilty plea:

> COURT:          In Paragraph 13 of your plea agreement, it says that this document, being your plea agreement, and its sealed supplement are your only agreements with the United States Attorney for the Eastern District of Kentucky and that no other promises have been made to you.  Is that true?
>
> DEFENDANT:          Yes, ma'am.

(*Id*. at 18).

Thus, the record does not support Brown's claim that his plea was coerced and involuntary. The presiding District Judge conducted a thorough Rule 11 colloquy with Brown, who indicated under oath that he was happy with the counsel provided by Mr. Richardson, and that no threats or coercion had taken place.  *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (observing, as to "fully accurate" Rule 11 procedures, that "[t]o allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law principles").

While Brown is correct that sworn statements made in open court constitute a formidable barrier that is not insurmountable, *see Blackledge*, 431 U.S. at 73-74, his "presentation of conclusory allegation[s] unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id*. at 74.  As explained below, Brown's own assertions in his Affidavit are conclusory and not sufficient to rebut the presumption that the Rule 11 colloquy should be trusted.  *Id*. at 73-74 ("the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings," and that "[s]olemn declarations in open court carry a strong presumption of verity").

> a.    **Brown has not met his burden of establishing counsel provided ineffective assistance with respect to his handling of discovery in the case.**

Brown argues that he was coerced into pleading guilty by counsel's failure to allow him to review discovery, and therefore he was unable to make informed decisions in his case. Specifically, Brown argues counsel provided ineffective assistance by entering into an agreement with the AUSA that prohibited him from possessing discovery. Brown avers that "[b]ecause [he] was not allowed to review much of the discovery, it prevented [him] from knowing the facts and evidence surrounding the prosecutor's allegations against [him], and it also prevented [him] from having meaningful discussions with attorney Richardson concerning the evidence and potential defenses that were available to [him,] but in which [he] was never informed." (R. 886-2, at ¶ 9). The record, however, does not support Brown's vague claims.

On August 23, 2012, presiding Magistrate Judge Robert E. Wier issued a general discovery order requiring counsel to confer and stated that, upon request, the AUSA must produce all items set forth in the order, including "all evidence favorable to the defendant." (R. 68, at 2-3). On September 18, 2012, counsel submitted a proposed Agreed Protective Order to the Court wherein they recited they had conferred about pretrial discovery and agreed that counsel for Brown would be provided copies of the discovery to which he is entitled, but set forth certain protections for some of the items. (R. 147).

On September 18, 2012, Magistrate Judge Wier entered the Agreed Protective Order setting parameters for the handling of certain discovery materials, including audio recordings, video

11

recordings, statements of co-Defendants, statements of witnesses, and other information pertaining to the confidential informants. (R. 148). The Protective Order did not prevent Brown from reviewing the material provided by the Government with his counsel, but only prevented him from maintaining his own copy of the materials. "Generally, a trial court has discretion to restrict a party's opportunity to inspect and copy evidence." *United States v. Patrick*, No. 09-31-GFVT, 2014 WL 29381, at *7 (E.D. Ky. Jan. 3, 2014) (citing *United States v. Horn*, 187 F.3d 781, 792 (8th Cir. 1999)).

Here, counsel explained in his Affidavit that because the Protective Order prevented him from leaving discovery material with Brown, he brought the discovery material with him to the jail on numerous occasions and reviewed it with Brown. (R. 930-1, at ¶ 5). Counsel further explained that "[t]hese materials included phone records, many hours of jail phone calls, as well as other audio and video material." (*Id*.). Brown admits in his Affidavit that counsel brought at least some discovery to the jail. (R. 886-2). While Brown states counsel failed to bring all the discovery available to counsel for Brown to review, Brown does not articulate in his Affidavit what specific discovery he was denied. (*Id*.). In addition, Brown has not demonstrated how the particular discovery he alleges he was denied would have impacted his case or his decision to plead guilty.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. This Court's review of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The defendant bears the burden of overcoming the presumption that the challenged actions were sound strategy. *Id*. at 689.

Absent Brown setting forth sufficient facts otherwise, it is reasonable to assume that counsel reviewed all significant discovery materials with Brown and that counsel's decision not to review particular discovery with him was based on counsel's determination that it was not material to Brown's case. *See Patrick*, 2014 WL 29381, at *7 (finding defendant failed to present evidence contradicting counsel's statement that he reviewed the discovery in question and in his professional opinion it did not contain anything of assistance in defendant's case). This is particularly true where, as here, multiple defendants are involved in the alleged conspiracy and some of the discovery may not necessarily have involved Brown. In fact, counsel filed a successful motion seeking a separate trial from all co-Defendants except Mr. Briscoe, arguing much of the evidence against his other co-Defendants would not be relevant to Brown. (R. 385; R. 443).

Moreover, Brown had the opportunity to inform the Court that he felt compelled to plead guilty because counsel was denying him the opportunity to review his discovery materials and failed to do so. *See Buchanan v. United States*, Nos. 3:09-cr-038, 3:10-cv-561; 2014 WL 558671, at *4 (E.D. Tenn. Feb. 11, 2014) (finding defendant failed to prove counsel provided ineffective assistance by denying her opportunity to review discovery materials where court engaged her in meaningful plea colloquy, and nothing in record suggested counsel gave improper advice or that but for that advice defendant would have gone to trial). Instead, Brown admitted to the Court that he was "happy with the advice and counsel Mr. Richardson [provided him]." (R. 873, at 9). Brown also informed the presiding District Court that he was not being coerced into signing the Plea Agreement, and that he was pleading guilty because he was, in fact, guilty. (R. 873, at 10). *See Blackledge*, 431 U.S. at 73-74 (statements under oath at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings").

13

The Court also explained to Brown that he has a right to a trial and explained the rights he was giving up by pleading guilty, including the right to see and hear the Government's evidence against him and to call witnesses on his behalf. (*Id*. at 18-19). Brown had ample opportunity to tell the presiding District Judge of any concerns he had with respect to counsel's services and advice, but did not. Instead, Brown told the District Judge that he did not want to go to trial, but wanted to enter a guilty plea. Brown has failed to carry his burden to demonstrate that counsel provided deficient performance in his handling of discovery or that counsel's conduct was not within the broad range of competence demanded of attorneys in criminal cases.[6]

Further, even if counsel had performed deficiently in the handling of discovery, Brown has not established he was prejudiced by this alleged deficiency. Specifically, Brown fails to identify any specific discovery that he was denied; nor has he explained how this information would have changed his decision to enter a guilty plea. *Patrick*, 2014 WL 29381, at *7 (defendant must demonstrate disclosure of information would have resulted in a decision not to plead guilty). Accordingly, Brown has failed to establish there is a reasonable probability that but for counsel's errors regarding the handling of discovery, he would not have pleaded guilty and would have insisted on going to trial. Thus, this claim also fails on the second prong of *Strickland*. *See Hill*, 474 U.S. at 59.

---

[6]To the extent Brown argues in his Motion Requesting Expansion of Evidentiary Hearing that counsel failed to seek discovery or a bill of particulars with regard to the charges brought in the Supplemental Indictments, the Record does not support his argument. Counsel and Brown have both stated in their respective Affidavits that counsel obtained discovery and reviewed it, at least in part, with Brown. (R. 886-2, at ¶ 2; R. 930-1 at ¶ 5). Further, after the Third Superseding Indictment, counsel filed four discovery requests to ensure all discovery to which he was entitled had been obtained. (R. 369-72). Moreover, even if Brown had established that counsel was deficient in not requesting a bill of particulars, he has not established prejudice as he has failed to point to any specific evidence or information that he did not have that would have been available via a bill of particulars. Given the extensive discovery material provided, Brown's conclusory argument that trial counsel was deficient in not requesting a bill of particulars fails.

### b.   Brown has not met his burden of establishing counsel provided ineffective assistance in his investigation of the case.

Brown also argues that his plea was coerced by counsel's failure to conduct an independent investigation into the evidence and witnesses. Specifically, Brown argues that counsel should have "extended his investigation beyond the prosecution's files." (R. 886-1, at 6, 9). In his Affidavit, Brown asserts that he asked counsel to interview all the alleged co-conspirators, but "to [his] understanding [counsel] did no[t] investigate any of the witnesses or evidence in the case." (R. 886-2, at 2). Brown argues that had counsel interviewed the alleged co-conspirators, he would have learned that Brown did not conspire to engage in illegal conduct with them.

Brown is correct that in certain circumstances counsel can be found to have performed in a constitutionally deficient manner under *Strickland* by failing to interview witnesses. (R. 886-1, at 8-9). Counsel owes his client "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Brown, however, cannot meet his burden by making conclusory arguments, but must provide "sufficiently precise information as to the nature and probable effect that would have been obtained had counsel undertaken the desired investigation." *Crawford v. United States*, No. 04-cv-71543, 2008 WL 2948055, at *5 (E.D. Mich. July 31, 2008) (citing *United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir. 2002)).

Here, the record refutes Brown's statement that counsel failed to investigate the case. First, Mr. Richardson stated in his Affidavit that he conducted an independent investigation into the allegations against Brown, interviewed potential witnesses as he prepared for trial, and conducted

an independent investigation into the identity and background of the main informant.[7]  (R. 930-1, at ¶ 6).  In addition, a review of the record supports a finding that counsel was well immersed in the facts of the case.  Counsel filed a Motion to Suppress seeking to suppress evidence obtained from Brown's cell phones.  (R. 384).  At the evidentiary hearing on the Motion to Suppress, Mr. Richardson cross-examined a security officer and three law enforcement witnesses on the details surrounding Brown's two arrests and the searches of his cell phones.  (R. 445).  Mr. Richardson also filed a Motion *in Limine* seeking to exclude evidence of prior bad acts, references to firearms, officers' speculation as to why Brown became combative at Speedway, Brown's prior statements to officers regarding subject matters not directly relevant to current charges, certain text messages and a video taken at Tally Ho on January 22, 2012.  (R. 561).

In addition, despite Brown's suggestion to the contrary, the record supports a finding that counsel conducted at least some investigation into Brown's co-Defendants/co-conspirators.  First, Brown's Affidavit contains conflicting statements in this regard.  While Brown states it is his "understanding" that counsel "did no[t] investigate any of the witnesses or evidence in the case," he later admitted that counsel did investigate co-Defendant Snow.  (R. 886-2, ¶¶ 4, 12).  In addition, counsel argued in Brown's Motion for Separate Trials that a joint trial would deprive Brown of "his right to present exculpatory testimony of co-defendants who decline to take the stand in their own

---

[7]Brown challenges the adequacy of counsel's Affidavit on this point, stating "counsel does not identify one witness who he alleges to have interviewed nor does he identify [what] his alleged investigation consisted of." (R. 949, at 3).  However, the fact counsel's Affidavit does not identify the witnesses he interviewed does not negate counsel's sworn statement that he "interviewed numerous potential witnesses" as he prepared for trial. (R. 930-1, at ¶ 6).  Further, despite Brown's argument to the contrary, counsel did provide a summation of his investigation.  Specifically, he stated, under oath, that he interviewed witnesses, conducted investigation into the identity and background of the main informant, reviewed over 1,000 phone calls between the informant and Brown, and investigated the state cases that the Government intended to introduce as 404(b) evidence.  (*Id.*).

defense." (R. 385-1, at 4-5). Thus, this filing supports a finding that counsel had knowledge of the facts that went beyond simply a review of the prosecution's file as Brown alleges, and that counsel did have knowledge of what at least some of the co-Defendants/co-conspirators could provide in the way of testimony at trial.

Even assuming counsel did not interview the co-conspirators, Brown has not established such interviews would have revealed any new information not already known to counsel. Nor has Brown established that any of the co-conspirators, who were also represented by counsel, were willing to talk to his counsel or willing to testify on his behalf.[8]   Brown has also not pointed to any other specific witness or evidence that he believes counsel failed to investigate or explained what that witness or evidence would reveal.  Instead, the record indicates counsel was well immersed in the facts of this case, and was actively participating in Brown's defense.  In fact, counsel was preparing to go to trial, having already filed a Motion *in Limine* and proposed jury instructions, and had interviewed potential witnesses and was preparing for cross-examination.  (R. 561, 562, 930-1, at ¶ 6).

Brown's citations to decisions of the United States Supreme Court and the Sixth Circuit on this issue are distinguishable.[9]   *See Porter v. McCollum*, 558 U.S. 30 (2009) (holding counsel failed

---

[8]The co-Defendants/co-conspirators were represented by counsel, and thus it would have been unethical for Mr. Richardson to contact them without their counsel's consent to discuss this case. *See* Ky. Sup. Ct. R 3.130 (4.2).

[9]Brown cites to *Jackson v. Holland*, 80 F. App'x 392 (6th Cir. 2003).  (R. 886-1, at 8).  That case, however, was reversed and remanded by the Supreme Court in *Holland v. Jackson*, 542 U.S. 649 (2004). Thus, the Court will not discuss that ruling further.   In addition, Brown cites to several cases from circuits other than the Sixth Circuit.  This Court, however, is bound only by the decisions of the Supreme Court of the United States and the Sixth Circuit.

Nevertheless, the out-of-circuit cases Brown cites would not alter the Court's analysis as they consistently found counsel was ineffective for failing to conduct adequate pretrial investigation and was unaware of important, readily available facts. *See Davis v. Lambert*, 388 F.3d 1052, 1063-64 (7th Cir. 2004)

to conduct reasonable investigation at penalty phase of capital case and thus failed to uncover mitigation evidence of defendant's mental health, family background, lack of education or military service); *Rompilla v. Beard,* 545 U.S. 374, 385 (2005) (holding counsel deficient in preparing for sentencing in capital case by failing to review material counsel knew the state was planning to use to prove aggravation); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (holding counsel was deficient in not expanding their investigation for mitigation evidence in capital case beyond the presentence investigation report and one set of records they obtained, particularly in light of what counsel learned from those records); *Sowell v. Anderson*, 663 F.3d 783, 790-91 (6th Cir. 2011) (finding counsel deficient in failing to investigate defendant's childhood in preparation for presenting mitigating evidence at penalty phase of capital case). In each of these cases, the court found counsel deficient because counsel's particular decision not to investigate was unreasonable given the circumstances of what counsel knew at the time and what a reasonable investigation would have revealed.

For example, in *Sowell*, the Sixth Circuit held that counsel's failure to interview petitioner's family in determining a mitigation strategy for the penalty phase of a capital case was deficient

---

(counsel failed to investigate any of defendant's requested witnesses without adequate explanation; witnesses would have provided testimony that would have bolstered self-defense claim); *Washington v. Smith*, 219 F.3d 620, 632 (7th Cir. 2000) (counsel did not interview witnesses identified by defendant, did not ask defendant about them, or attempt to ascertain what they might say); *Anderson v. Johnson*, 338 F.3d 382, 292 (5th Cir. 2003) (counsel failed to interview eyewitness because discovery received from state did not indicate he would be favorable witness, but reasonable attorney would have made some effort to investigate where there were only two adult eyewitnesses to crime and counsel unaware of what witness would say); *Stanley v. Bartley*, 465 F.3d 810, 813-14 (7th Cir. 2006) (counsel prepared for trial by reviewing only statements made to police and investigation of prospective witness may have revealed important information that could have led to reasonable doubt, including that key witness against defendant was lying and had reason to kill victim); *United States v. Tucker*, 716 F.2d 576, 582-83 (9th Cir. 1983) (pre-*Strickland*) (counsel failed to interview any government witnesses or conduct any pretrial investigation into defense witnesses and thus did not learn readily available facts); *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974) (pre-*Strickland*) (finding deficient performance by counsel where counsel unaware of readily available facts because only preparation for trial was to interview defendant).

because counsel's strategic decision on mitigation ignored a body of evidence, petitioner's horrific childhood, of which counsel did not know but could have learned with reasonable effort. *Sowell*, 663 F.3d at 790-91. The Sixth Circuit noted that petitioner had submitted affidavits of fourteen family members and friends who explained the violence and deprivation of petitioner's childhood, and many of the witnesses stated in their affidavits that they would have been available and willing to testify at the penalty phase. The court also noted that counsel had expert psychological reports that referenced a childhood of abuse and neglect, which should have moved counsel to investigate further. Thus, because petitioner had established counsel was unaware of facts necessary to make an informed strategic decision of how to proceed in mitigation, counsel's failure to interview family and friends about petitioner's background, education and family relationships fell short of a reasonable investigation, and thus was deficient. *Id.*

Here, Brown has not established counsel was unaware of facts necessary to make informed strategic decisions. Brown argues that had counsel interviewed the alleged co-conspirators, he would have learned Brown did not conspire with them to engage in unlawful conduct and did not know some of his co-Defendants/co-conspirators. (R. 886-1, at 4-6). However, as discussed above, the motion filings indicate counsel at least anticipated calling co-Defendants to testify; that was one of the arguments presented for seeking separate trials (*see* R. 385-1, at 4-5). Also, Brown's current briefing suggests counsel was aware that Brown did not know all of his co-Defendants (*see* R. 886-1, at 4-6 (Brown provides extensive discussion on co-Defendant Snow's in-court admission that he did not know Brown)). Brown has not provided any additional information of what counsel would have gleaned from interviewing the co-Defendants and any other potential witnesses that was not otherwise already known to counsel. Further, Brown has not provided any affidavits of potential

19

witnesses and has not established the nature of their testimony or that they were available and willing to testify. Accordingly, Brown has not met his burden of establishing counsel performed deficiently in investigating this matter.

Moreover, Brown has not established prejudice–"that there is a reasonable probability that, but for counsel's errors, [Brown] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Here, the record supports a finding that Brown's decision to plead guilty was not based on any deficiencies in counsel's investigation as alleged, but because investigators had located a key witness. Specifically, counsel's Affidavit explains that with just days remaining before trial, the Assistant United States Attorney ("AUSA") notified counsel that investigators had "followed the informant's directions to a house where it was alleged Mr. Brown engaged in many large scale drug purchases." (R. 930-1, at ¶ 10). The AUSA provided counsel with the name of the individual who owned the house, and counsel contacted the attorney for this witness and verified that the witness was willing to testify against Brown at trial. (*Id.*). Counsel stated that he advised Brown that in light of the anticipated testimony of this new witness, Brown's chance of winning at trial was slim. (*Id.* at ¶ 11). Counsel told Brown that he was prepared to go to trial, but recommended Brown consider a plea agreement. (*Id.*). Counsel also states that he explained to Brown that it was ultimately Brown's decision whether to go to trial or take the plea deal. (*Id.*). Brown decided to enter into the Plea Agreement. (R. 570).

Counsel's Affidavit is consistent with the factual basis set forth in the Plea Agreement and with statements made to the Court on Brown's behalf in both the sentencing memorandum and at sentencing. In the Plea Agreement, Defendant admitted his role in the conspiracy was to purchase cocaine for the purpose of distribution to others. (R. 570, at ¶ 3). Similarly, in the Sentencing

20

Memorandum and at sentencing, counsel explained Brown's role in the conspiracy was to obtain and transport cocaine from a Georgia supplier to Lexington, Kentucky, for further distribution by others. (R. 701). Thus, the record supports counsel's accounting of why Brown ultimately decided to enter into the Plea Agreement–the Government had located a key witness who owned the house where the Government alleged Brown purchased large quantities of cocaine, and the witness was willing to testify against Brown.[10]

Here, counsel was well informed of the facts of the case, and was actively engaged in preparing for trial. Brown has not articulated what new information could have been obtained from the alleged co-conspirators or unidentified witnesses or how it would have impacted his decision to plead guilty. Further, even if counsel had failed to interview co-conspirators and other witnesses and such conduct was found to be constitutionally deficient, Brown has failed to establish that but for counsel's alleged failure to investigate this case, he would not have pleaded guilty but would have insisted on going to trial. Instead, the record supports a finding that Brown's decision to plead guilty was due to the Government locating a key witness who was willing to testify as to Brown's source of supply. Brown has not demonstrated that counsel's lack of investigation constituted deficient performance, that he was prejudiced by such conduct, or that it rendered his plea unknowing and involuntary.

> **c.    Brown has not met his burden of establishing counsel provided ineffective assistance by relaying the Government's statement that Brown's mother would be prosecuted if he did not plead guilty.**

---

[10]Counsel's Affidavit also references over 1,000 telephone calls he reviewed in preparing the case for trial and the PSR provides that these calls were indicative of Brown's agreement to distribute the cocaine to others. Thus, this evidence further belies Brown's argument that there was no evidence to support his conviction for conspiracy.

Brown also argues that his guilty plea was involuntary because his counsel relayed a threat from the AUSA that if he did not plead guilty, the Government would prosecute Brown's mother. Brown asserts counsel's conduct in relaying this threat constitutes ineffective assistance. Specifically, Brown argues "no reasonably competent attorney would have relayed threats by the prosecutor . . . to his client in an effort to persuade his client to plead guilty when there existed no legitimate basis in evidence for such threats." (*Id*. at 11).

To prevail on this claim, Brown must establish that counsel's conduct was not "within the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. 687. In determining whether counsel's performance was objectively reasonable, the Supreme Court has explained "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

A review of the record prior to sentencing does not evidence the Government threatened to prosecute Brown's mother if he did not plead guilty. To the contrary, as discussed above, the record leading up to sentencing indicates no such threat was made. The Plea Agreement provides: "the Defendant's entry into this Agreement is voluntary." (R. 570, at 6 ¶ 15). Further, the presiding District Judge specifically asked Brown during the plea colloquy if anyone had threatened, forced, or in any way coerced him into either signing the Plea Agreement or pleading guilty, and he responded, under oath, "[n]o, Ma'am." (R. 873, at 10).

The only evidence before the Court that such a threat was made is provided in Brown's Affidavit. (R. 886-2). However, Brown provides only vague assertions that do not provide evidentiary detail necessary to overcome the presumption of truthfulness afforded his statements

22

during the plea colloquy.[11]  *See United States v. Eversole*, No. 6:05-34-DCR, 2010 WL 420067, at *2 (E.D. Ky. Feb. 1, 2010) (finding vague allegation in affidavit that counsel told defendant the government had summoned his wife and if he did not plead guilty it was going to prosecute her did not provide evidentiary detail necessary to support a claim of coercion and intimidation.).

Further, even assuming counsel relayed such a statement, such conduct alone does not render Brown's plea involuntary, and Brown has not demonstrated that counsel was deficient in informing Brown of this information.  The Supreme Court has reserved judgment on the constitutional implications of a prosecution's offer during plea negotiations of lenient treatment for someone other than the defendant to whom the plea offer is directed.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 368 n.8 (1978).  The Sixth Circuit, however, has upheld pleas against assertions that they were coerced by offers of lenient treatment to a loved one where the government had probable cause to prosecute the loved one.  *See Doe v. United States*, 85 F.3d 628, 1996 WL 250444, *5 (6th Cir. 1996) (table decision) (rejecting claim that plea involuntary because government threatened to prosecute defendant's father as no evidence prosecutor lied about defendant's father's situation to get defendant to enter plea); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983) (finding totality of circumstances supported finding that defendant's plea was knowing and voluntary where prosecution would only agree to a reduced sentence for defendant's wife if defendant pleaded guilty); *see also Eversole*, 2010 WL 420067, at *2 ("even if the government had made threats to prosecute [defendant's] wife as part of plea negotiations, such threats were based on probable cause" and

---

[11]Brown's Affidavit provides: "Attorney Richardson told me that if I did not plead guilty to conspiracy, that the AUSA Hydee Hawkins was going to indict and prosecute my mother for some alleged crime."  (R. 886-2, at ¶ 5).  He further states: "I was lead to believe that if the AUSA attorney could charge and prosecute me for a crime that I did not commit, that she also could charge and prosecute my mother for a false crime."  (*Id*. at ¶ 6).

"would not serve as the basis for a collateral challenge to [defendant's] guilty plea"); *Martinez v. Roggenbuck*, No. 2:12-cv-11778, 2014 WL 2711917, at *5 (E.D. Mich. June 16, 2014) ("mere fact that Petitioner's plea was based, in part, on a promise that his wife would not be prosecuted does not make it without more coercive") (collecting numerous cases from other circuits). Thus, the mere fact that Brown's decision to enter a guilty plea may have been based in part on a statement that his mother would be prosecuted if he did not plead guilty does not, without more, make it a coerced plea. (*Id.*).

Here, Brown stated in his memorandum in support of his § 2255 Motion that counsel told him if he did not plead guilty, the Government would indict his mother based on telephone conversations between Brown and his mother that the Government believed were conversations about drug transactions. (R. 886-1, at 3; *see also* R. 886-2, at ¶ 5). While Brown's Affidavit asserts that because the Government charged him for a crime he did not commit, he believed his mother could also be charged for a "false crime," Brown does not deny he had telephone conversations with his mother that the Government could reasonably interpret as relating to drug transactions. Moreover, Brown does not allege his counsel had reason to distrust the AUSA's alleged statements that the Government had communications between Brown and his mother that could be construed as related to drug transactions.

Accordingly, even if such a threat had been relayed, because Brown has not demonstrated that counsel had reason to believe the Government's threat to prosecute Brown's mother was not based on probable cause, he has not met his burden of establishing counsel's conduct in relaying this information to him was constitutionally deficient. *See Boyd v. United States,* 81 F. 3d 160, 1996 WL 132207, at * 2 (6th Cir. 1996) (table decision) ("even if defense counsel told [defendant] that the

government planned to prosecute [his] wife if he did not plead guilty, counsel's conduct did not rise to the level of constitutionally deficient performance"); *Eversole,* 2010 WL 420067, at *3 (finding counsel not deficient in advising defendant that his wife possibly stood to be indicted, and conclusory allegations in affidavit did not overcome presumption that Rule 11 colloquy was truthful); *United States v. Adams,* No. 1:05-cr-00126-JG, 2008 WL 918534, at **6-7 (N.D. Ohio Apr. 2, 2008) (finding counsel not deficient in conveying threat to defendant that government would indict wife if he did not plead guilty where probable cause existed to indict wife).  Finding Brown failed to meet his burden on the first prong of *Strickland*, the Court need not evaluate the prejudice prong. *Strickland*, 466 U.S. at 697.

> **d.    Brown has not met his burden of establishing counsel provided ineffective assistance by advising him to plead guilty.**

Brown also argues that counsel rendered ineffective assistance by advising him to plead guilty to a drug conspiracy that the evidence did not support.  However, the record demonstrates that based upon the information known to counsel, his advice to plead to a lesser included offense was not objectively unreasonable given the circumstances of the case.

Specifically, as discussed above, a few days prior to trial, the Government informed counsel that they had located a key witness against Brown who was willing to testify that Brown made many large-scale drug purchases at the witness's house.  (R. 930-1, at ¶ 10). Counsel conferred with the attorney for this witness and verified that the witness was willing to testify against Brown at trial.  Thus, despite Brown's argument that there was no evidence against him to support counsel's advice to plead guilty, counsel confirmed for himself the substance of the expected testimony against Brown by contacting the witness's attorney.  It was after this discussion that counsel advised Brown that in

light of the anticipated testimony of this new witness, he recommended Brown consider the plea agreement given the number of years he could face if he went to trial. (*Id*. at ¶ 11). Counsel informed Brown, however, that it was ultimately his decision whether to plead guilty or go to trial. (*Id*. at ¶¶ 11-12).

Further, the record also demonstrates that counsel was able to negotiate a Plea Agreement for Brown that dismissed the most serious charges against him. (R. 570, at 1). By pleading guilty to the lesser included offense, Brown reduced the mandatory minimum he was facing on Count 2 from ten years to five years. The Government also agreed to move to dismiss the remaining charges, including Count 1, which also carried a 10-year mandatory minimum. Counsel also successfully negotiated the dismissal of a pending felony drug offense in Hamilton County, Tennessee. (R. 570, at 6). In addition, Brown also obtained the benefit of a 3-level reduction in his offense level for acceptance of responsibility.[12] Given the development of the Government's case against Brown and the substantial benefit to Brown if he accepted the Plea Agreement, Brown has not met his burden of demonstrating counsel's advice to take the plea deal was constitutionally deficient.

### 2.    Counsel did not Provide Ineffective Assistance in Failing to File a Notice of Appeal

In Ground Two, Brown asserts that his counsel rendered ineffective assistance by failing to file a notice of appeal after Brown instructed him to do so. (R. 886-1, at 12-14). The *Strickland* two-part test also applies to a claim that counsel was ineffective for failing to file a notice of appeal.

---

[12]As a result of Defendant's decision to plead guilty, the Government made other sentencing decisions that benefitted Brown. Specifically, as the AUSA explained during sentencing, the Government did not seek applicable enhancements under the Guidelines for Brown having a leadership role or possession of a firearm, and agreed to recommend a 3-point reduction for acceptance of responsibility despite the fact Brown pleaded guilty just days before trial. (R. 872, at 11).

*Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000); *Regalado v. United States,* 334 F.3d 520, 524-25 (6th Cir. 2003). It is well-established that where a defendant expressly instructs his counsel to file a notice of appeal and counsel fails to do so, counsel's conduct is objectively unreasonable. *Flores-Ortega,* 528 U.S. at 476-77. Where, however, a defendant has not given his counsel express instructions, the court must ask whether counsel "consulted" with the defendant about an appeal. *Id*. at 478. If counsel has consulted with his client, then counsel cannot be found to have acted unreasonably unless counsel ignored his client's express instructions. *Id*.

If, however, counsel has not consulted with his client about an appeal, then counsel's failure to consult is unreasonable if "a rational defendant would want to appeal," or "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. If a court determines counsel's conduct was unreasonable, the defendant must demonstrate that he was prejudiced by the conduct by proving that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.

### a.    Brown did not give counsel an express instruction to file an appeal

The first factual issue for this Court under *Flores-Ortega* is to determine if Brown specifically instructed Attorney Richardson to file an appeal. Here, conflicting testimony was heard at the evidentiary hearing on this issue. As explained below, Brown has not meet his burden to demonstrate by a preponderance of the evidence that he expressly instructed his counsel to file a notice of appeal.

At the evidentiary hearing, Brown testified on his own behalf, and he also called three witnesses:  his wife, Tareva Brown; his cousin, Brian Cowan; and his mother, Vada Haley. (R.

1100). Mrs. Brown testified that she knew from her prior conversations with Brown that he would want to appeal "if sentencing did not go his way." (*Id*. at 18). Thus, after the sentencing hearing, she asked Mr. Richardson "what can we do next?" (*Id*. at 12, 17). She testified that Mr. Richardson explained they could try to appeal, but appeals were not always successful. (*Id*. at 17). Mrs. Brown further testified that after the sentencing hearing and while Brown was still housed at the local detention center, she arranged a three-way telephone call for Brown to talk to Mr. Richardson about an appeal. (*Id*. at 13-22). While she did not listen to the entire conversation, Mrs. Brown testified that she specifically heard Brown telling Mr. Richardson that he "wanted to appeal." (*Id*.). Mr. Richardson allegedly responded that there was nothing to appeal. (*Id*.).

Further, Mrs. Brown testified that she later visited Brown at FCI McCreary, and Brown again told her he wanted to appeal. (*Id*. at 23-28). Thereafter, at Brown's request, Mrs. Brown called Mr. Richardson. During that conversation, she told Richardson that Brown "wanted to appeal," and she asked him why he was not filing the appeal. (*Id*. at 23-26). Mrs. Brown testified that Mr. Richardson told her that he was not going to appeal Brown's case. (*Id*.).

Ms. Haley, Brown's mother, testified that she only talked to Mr. Richardson about an appeal one time and it was immediately after the sentencing hearing. (R. 1100, at 37-39, 42-44). Ms. Haley explained that because she was late to the sentencing hearing, she talked to Mr. Richardson after the hearing to find out what had happened. (*Id*. at 42-44). During their discussion, she asked Mr. Richardson how to go about filing an appeal because she knew Brown would want to appeal. (*Id*. at 37-39, 42-44). She testified that Mr. Richardson told her it would be a waste of time to file an appeal. (*Id*.). Ms. Haley also testified that either that same day or the next day she talked to Brown and he asked her about an appeal. (*Id*. at 38-39, 45). She told him that Mr. Richardson told her it

would be a waste of time to appeal because Brown would be on his way home by the time an appeal was over, but Brown told her he still wanted to appeal and was going to look into it. (*Id*.).

Mr. Cowan, Brown's cousin, testified that he never talked to Mr. Richardson about an appeal on Brown's behalf. (R. 1100, at 33). Instead, Mr. Cowan stated he had numerous conversations with Brown, and he understood from the conversations that Brown wanted to appeal. (*Id*. at 29-36). Brown told Mr. Cowan to call Mr. Richardson and have Mr. Richardson contact Brown, but Mr. Cowan did not relay this information to Mr. Richardson. (*Id*. at 33-34).

Brown testified at the evidentiary hearing that while still in the holding cell before the rearraignment, he told Mr. Richardson that he wanted to appeal. (R. 1100, at 50, 55-56). Brown testified that Mr. Richardson told him he would come see him after the sentencing and they would file an appeal. (*Id*. at 50). Brown explained that when Mr. Richardson did not follow up with him after the sentencing, he had his wife facilitate a three-way call with Mr. Richardson so he could talk to him about an appeal.[13] (*Id*. at 51-53). Brown stated he told Mr. Richardson to file an appeal within two weeks of his sentencing because he knew he had only fourteen days to file it. (*Id*. at 52-53). Brown testified that after he arrived at FCI McCreary, he called Richardson to find out why he did not file the appeal, and Richardson told him "there was nothing there." (*Id*.)

Attorney Richardson also testified at the evidentiary hearing and stated that neither Brown nor a member of his family ever instructed him to file an notice of appeal. (R. 1100, at 70-74, 77). Richardson testified that if Brown had directly or indirectly requested he file an appeal, he would

---

[13]Brown explained he tried to call Mr. Richardson directly, but could not get through to him on the jail telephone. (R. 1100, at 51).

have "definitely" filed it regardless of whether he believed there were any appealable issues. (*Id*. at 74; *see also id*. at 79 (if asked, counsel would have "absolutely" filed a notice of appeal)).

Mr. Richardson testified, and his Affidavit also explained, that the need for a plea agreement became evident when the Government presented him with additional evidence the week before trial of a key witness the Government was able to locate who was willing to testify against Brown at trial. (*Id*. at 73, 78). Mr. Richardson contacted the witness's attorney, who verified the witness was willing to testify against Brown. (R. 930-1, at ¶¶ 10-11). Richardson notified Brown of this development. Richardson told Brown that he thought Brown had a slim chance of success at trial because of the anticipated testimony of the Government's new witness. (*Id*.). Based on this development, Mr. Richardson recommended Brown take the negotiated plea deal, but explained it was ultimately Brown's decision. (*Id*.). Counsel testified that when he discussed the proposed Plea Agreement with Brown, he explained that it contained a provision waiving his right to appeal unless the sentence exceeded 108 months. (R. 964-1, at ¶ 2; R. 1100, at 79).

In addition, Mr. Richardson testified that in preparation for the evidentiary hearing on the pending § 2255 Motion, he reviewed his file and did not find any correspondence or notation regarding Brown requesting he file a notice of appeal. (R. 1100, at 73-74). Mr. Richardson reiterated that had Brown told him to file an appeal, he "absolutely would have filed an appeal" on Brown's behalf despite the waiver provision in the Plea Agreement. (R. 1100, at 79; *see also id*. at 74).

The testimony of Mrs. Brown, Mr. Cowan, and Ms. Haley do not evidence that Brown specifically instructed Mr. Richardson to file a notice of appeal. Mrs. Brown testified she heard Brown tell Mr. Richardson on the three-way call that he "wanted to appeal," and she called Mr.

Richardson after Brown arrived at FCI McCreary and told him Brown "wants to appeal" and asked why he was not appealing. (R. 1100, at 13-26). The law in the Sixth Circuit, however, requires that to find counsel provided per se ineffective assistance in failing to file a notice of appeal, a defendant must have given an express instruction to counsel to file an appeal. *See Regalado*, 334 F.3d at 525-26 (citing *Roe*, 528 U.S. at 477).

Although a defendant may express to counsel his desire to appeal, such expression is not sufficient to meet the requirement that he specifically instruct counsel to file an appeal. *See id*.; *United States v. Taylor*, No. 6:07-12-DCR, 2008 WL 4829873, at *7 (E.D. Ky. Nov. 5, 2008); *United States v. Demling*, No. 6:05-30-DCR, 2008 WL 45381, at *4 (E.D. Ky. Jan. 2, 2008) (repeated calls to counsel to let them know he "wanted to appeal" is an expression of his desire to appeal and does not equate to an actual instruction to file an appeal)*; United States v. Hitchcock*, No. 1:08-cr-1-04, 2009 WL 3754394, at *7 (W.D. Mich. Nov. 5, 2009) (defendant's statement that he "wished to exercise right to appeal" or making his "desire to appeal" known is not the same as specifically instructing a notice of appeal be filed). Thus, Mrs. Brown's testimony that she heard Brown tell Mr. Richardson that he "wanted to appeal," does not establish Brown gave Richardson an express instruction to file an appeal.

Further, Ms. Haley's and Mr. Cowan's testimony also fail to establish Brown gave Mr. Richardson a specific instruction to file a notice of appeal. Ms. Haley admitted she simply asked Mr. Richardson how to appeal because she knew Brown would want to appeal. (R. 1100, at 38-39). And Mr. Cowan admitted that while he knew Brown wanted to appeal, Mr. Cowan never talked to Mr. Richardson about an appeal. (R. 1100, at 33-34). Thus, this testimony does not evidence Brown expressly instructed counsel to file a notice of appeal.

Instead, Brown provided the only testimony that he gave his counsel an express instruction to file an appeal. (*Id*. at 52). Brown testified that he told counsel "to appeal" during a three-way telephone call that his wife arranged for him soon after the sentencing. (R. 1100, at 52). As discussed above, however, Mrs. Brown testified that during this telephone call she heard Brown say he "wanted to appeal," not that he specifically instructed counsel to file an appeal. (*Id*. at 13). Brown has not substantiated his claim that he expressly directed counsel to file an appeal after his sentencing.[14]

Moreover, Mr. Richardson testified that he was not instructed by anyone to file an appeal after the sentencing hearing. (*Id*. at 70-74). In fact, counsel does not recall having any discussions with Brown or his family members about an appeal after sentencing. (*Id*.). Mr. Richardson testified that had Brown, or someone on his behalf, instructed him to file an appeal, he would have "absolutely" done so without regard to the likely success of an appeal. (*Id*. at 74, 79).

Brown carries the burden of proof on this claim. The only evidence presented that he expressly instructed counsel to file an appeal is his own testimony, which is contradicted by the testimony of counsel and Mrs. Brown. The Court credits Attorney Richardson's testimony over that

---

[14]Brown also testified that before his rearraignment hearing he told Mr. Richardson he wanted to appeal, and Mr. Richardson said he would come see him after sentencing and they would file an appeal. (R. 1100, at 50, 54-56). The Court does not credit Brown's testimony regarding this alleged discussion about an appeal with counsel in the holding cell prior to the rearraignment. At the time this discussion would have been held, counsel and Brown both knew he was reserving only a limited right to appeal and Brown's sentence had not yet been determined. Thus, it is unlikely that Brown would have instructed counsel to file an appeal at that point in time since he did not know what sentence would be imposed. If, as Brown suggests, he was unhappy with the Plea Agreement, did not want to enter into the guilty plea, or wanted to appeal despite whatever sentence may be imposed, he had the opportunity to tell the presiding District Judge during the rearraignment proceeding that he did not want to plead guilty and wished to proceed to trial, or that he wanted to retain additional appellate rights. The Court conducted a thorough Rule 11 colloquy, and Brown's responses "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74. While Brown alleges he was simply following his counsel's instructions in answering the Court's questions, as discussed above, Brown has not established his plea was involuntary or unknowing.

of Brown with respect to whether Brown instructed counsel to file an appeal.  Attorney Richardson has been defending defendants in federal criminal cases for more than twenty-five years, and he stated unequivocally that had Brown instructed him to file an appeal, he would have done so. Counsel does not give the impression of an attorney who would ignore an express instruction from his client.  Instead, counsel explained that had Brown instructed him to file an appeal, he would have filed a notice of appeal along with a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) (providing a procedure for counsel to seek to withdraw while setting forth all possible defenses); *see United States v. Davidson*, No. 6:06–407, 2008 WL 170507, at *14 (E.D. Ky. Jan. 17, 2008) (finding counsel's testimony credible where counsel provided a detailed account of the events and described regular practices he followed with respect to a defendant's appeal rights).  Moreover, Brown's testimony that he gave an express instruction conflicts with the testimony of Mrs. Brown who recalled her husband telling counsel only that he "wanted to appeal."  Accordingly, Brown has not met his burden to demonstrate by a preponderance of the evidence that he expressly instructed counsel to file a notice of appeal.

### b.  Counsel did not have a constitutional duty to consult with Brown about an appeal

Once it is determined that a defendant did not expressly instruct his counsel to file a notice of appeal, the court must ask whether counsel consulted with defendant about an appeal. *Flores-Ortega,* 528 U.S. at 478.  The Supreme Court has held that in this context, "consult" has a specific meaning:  to "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." *Id.*  Here, Attorney

33

Richardson did not testify that he consulted with Brown about an appeal after the sentencing, and thus the Court will assume for purposes of this analysis that he did not do so.[15]

Thus, the next question is whether counsel had a constitutionally-imposed duty to consult with Brown. The Supreme Court has held that counsel has a duty to consult with a defendant about an appeal if there is reason to think: "1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or 2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores Ortega*, 528 U.S. at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id*. In the circumstance where a defendant has pleaded guilty, a court should consider such factors as whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appellate rights. *Id*.

Here, the record supports a finding that counsel did not have a constitutionally-imposed duty to consult with Brown about an appeal. First, Mr. Richardson had no reason to believe that a rational defendant in Brown's position would have wanted to appeal, and counsel has no recollection of Brown expressing an interest in filing an appeal. Counsel explained it became clear a Plea Agreement would be Brown's best course when the Government located a key witness who was willing to testify against Brown. As discussed above, counsel was able to negotiate a plea agreement permitting Brown to plead guilty to a lesser included offense on Count 2 with the remaining counts being dismissed. By pleading guilty to the lesser included offense, Brown reduced the mandatory

---

[15]In fact, the record supports a finding that counsel did not consult with Defendant about an appeal. Counsel testified that the only time he recalled specifically discussing an appeal with Brown was prior to his rearraignment, during their discussion of the appellate waiver contained in the Plea Agreement. (R. 1100, at 77).

minimum he was facing on Count 2 from ten years to five years.  The Government also agreed to move to dismiss the remaining charges, including Count 1, which also carried a 10-year mandatory minimum.  Brown also obtained the benefit of a 3-level reduction in his offense level for acceptance of responsibility.

In addition, Brown was sentenced within the range anticipated.  The parties set forth in the Plea Agreement their recommended calculations under the Guidelines, which included a base offense level of 30 with a 3-point reduction for acceptance of responsibility.  (R. 570, at ¶ 5).  The Court adopted the Guideline calculations set forth in the PSR, which was consistent with the parties' recommendation, finding a total offense level of 27.  (R. 872, at 3).  Given a total offense level of 27 and Brown's criminal history score of III, his Guideline range was 87 to 108 months.  Although the Court acknowledged it would normally impose a sentence above the Guideline range for defendants in similar circumstances, it imposed a within-Guideline sentence of 108 months.  (*Id*. at 13).  Thus, Brown received a sentence within the range anticipated, albeit at the high end, and he waived his right to appeal a sentence of this length.  (*See* R. 570, at ¶ 8).  Further, there were no nonfrivolous grounds for appeal because, as explained above, Brown entered a voluntary and knowing plea and he was sentenced within the Guideline range anticipated.

Accordingly, Brown has failed to establish by a preponderance of the evidence that counsel provided constitutionally deficient assistance by not filing a notice of appeal or consulting with Brown about an appeal.  Finding Brown has failed to establish the deficient performance prong of *Strickland,* the Court need not consider the prejudice prong on this claim.  *Strickland*, 466 U.S. at 697.

**3.    Counsel did not Provide Ineffective Assistance in Failing to Object to the Government's Issuance of Multiple Superseding Indictments**

In Ground Three, Brown argues that counsel provided ineffective assistance by failing to defend him against the AUSA's repeated efforts to violate his speedy trial rights by obtaining superseding indictments as a delay tactic and by counsel's filing of frivolous motions that contributed to the unnecessary delay of his trial.  (R. 886-1, at 14).  Brown, however, makes conclusory arguments that the record does not support.

Brown has not articulated a factual basis in his § 2255 Motion that renders counsel's failure to challenge any of the superseding indictments unreasonable.  Instead, Brown makes vague allegations that counsel provided ineffective assistance by not defending him from the AUSA's conduct in violating his speedy trial rights by filing numerous superseding indictments and not bringing the misconduct to the Court's attention.  Brown has not, however, established that any of the superseding indictments were simply a delay tactic or were otherwise improper.  *See United States v. Chew*, 497 F. App'x 555, 559 (6th Cir. 2012) (affirming on direct appeal rejection of Sixth Amendment challenge to pretrial delay, and noting to extent delay caused by filing of superseding indictment, there was no showing it was groundless or filed to gain impermissible tactical advantage).  Instead, a review of the superseding indictments reveals that with each new indictment, substantial changes were made to the case, including adding new Defendants, adding new charges, or significantly altering the factual allegations.

On August 16, 2012, Brown was first charged in this case, along with ten others, by way of a 25-count Superseding Indictment that, in addition to charging Brown with conspiracy to distribute 28 grams or more of crack cocaine and making false statements to a federal agent, also charged him

36

with possession of a firearm while under indictment for a felony–previously charged and subsequently dismissed in 5:12-cr-41-KKC.[16]  (R. 20).  The October 3, 2012, Second Superseding Indictment added eleven new Defendants and charged Brown with two additional counts:  Count 3, distribution of crack cocaine, and Count 15, concealing a person from arrest.  (R. 179).  This Second Superseding Indictment also dropped the firearm charge against him.  (R. 179).  In the December 11, 2012, Third Superseding Indictment, Brown was charged with an additional count:  Count 2, conspiracy to distribute 5 kilograms or more of cocaine.[17]  (R. 337).  Lastly, in the March 12, 2013, Fourth Superseding Indictment, Count 1 was amended against Brown to extend the time frame of the conspiracy.  It also altered the allegations against Brown in Count 4–the prior charge of distribution of crack cocaine on or about April 14, 2011, was changed to possession with intent to distribute crack cocaine on or about April 13, 2011.  (R. 472).  Defendant's vague allegations that the Government sought these superseding indictments only as a delay tactic is belied by the record demonstrating substantial changes with each new indictment.  Thus, Defendant has not established that counsel's performance was deficient in not objecting to the superseding indictments as being brought merely to delay the trial of this matter.

Further, as explained below, no speedy trial violation occurred in this case.  (*See* Section B(3) below).  Thus, to the extent Brown is arguing counsel was deficient in failing to file a motion to

---

[16]On April 11, 2012, a federal grand jury returned an Indictment charging Defendant with possession of a firearm while under indictment for a felony in violation of 18 U.S.C. § 922(n), and forfeiture.  *See United States v. Brown*, 12-cr-00041-KKC, ECF No. 1.  On October 16, 2012, the Court granted the United States' Oral Motion to Dismiss Indictment in 12-cr-00041-KKC without prejudice, without objection from Defendant.  (R. 34).

[17]While Brown suggests that the named co-conspirator, Larry Briscoe, ultimately pleaded guilty to a distribution charge that did not involve Brown (*see* R. 1049, at 3), Briscoe admitted in his Plea Agreement to conspiring with Brown, as well as others, to distribute crack cocaine.  (*See United States v. Briscoe*, 5:12-cr-100-KKC, ECF No. 200, at 4-5).

dismiss on speedy trial grounds, the claim lacks merit. The failure to file a meritless motion does not constitute deficient performance. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). Accordingly, Brown has not met his burden of establishing counsel's conduct was deficient in failing to raise a speedy trial violation claim or to object to the Government's use of superseding indictments as a delay tactic.

Moreover, even assuming counsel was deficient in not making an objection or seeking to dismiss the superseding indictments on the basis of a speedy trial violation, Brown has not demonstrated a reasonable probability that such action would have resulted in the district court dismissing the charges against him with prejudice on that ground. As explained below, Brown has not met his burden of proving that a challenge under the Sixth Amendment would have been successful. Instead, an analysis of the four factors to be weighed in evaluating a speedy trial claim under the Sixth Amendment weigh against finding a Sixth Amendment violation occurred. (*See* Section B(3)(b) below).

In addition, Brown cannot establish prejudice for counsel's failure to assert a Speedy Trial Act violation. Where a Speedy Trial Act violation occurs, a court has the option of dismissing charges with or without prejudice. *See* 18 U.S.C. § 3161(a)(2); *United States v. Myers*, 666 F.3d 402, 404-06 (6th Cir. 2012); *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004). A dismissal without prejudice on a defendant's motion would permit the Government to reindict the defendant, starting a new speedy trial clock on which to proceed to trial, *Myers,* 666 F.3d at 405-06, thus resulting in no prejudice. In determining whether a dismissal for violation of the Speedy Trial Act is with or without prejudice, the court considers three factors: 1) "the seriousness of the

offense"; (2) "the facts and circumstances of the case which led to the dismissal"; and (3) "the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id*. (quoting 18 U.S.C. § 3162(a)(1) & (2)).

Here, each of these factors weighs against a dismissal with prejudice in Brown's case. First, Brown was charged with being involved in an extensive drug conspiracy, which is a serious offense. *See Campbell*, 364 F.3d at 731 (finding drug distribution conspiracy a serious offense). Second, the delays in Brown's case were not extensive and were occasioned by the numerous defense motions, the complexity of the investigation, and the voluminous discovery. In addition, the Court granted continuances, without objection from Brown, on the motions of co-Defendants upon making ends-of-justice findings. Despite Brown's vague and conclusory allegations, he has not demonstrated that the Government acted in bad faith in obtaining the superseding indictments or that the filing of the superseding indictments was the cause of significant delay. Lastly, Brown does not articulate any actual prejudice as a result of the delay that would have impacted reprosecution.

Accordingly, assuming arguendo that a Speedy Trial Act violation occurred, Brown has not established prejudice–a reasonable probability that the presiding District Judge would have dismissed with prejudice the charges against him. *See McAuliffe v. United States*, 514 F. App'x 542, 546-47 (6th Cir. 2013) (finding even if counsel's performance defective in failing to raise Speedy Trial Act violation, no prejudice because defendant did not demonstrate his case would have been dismissed with prejudice instead of without prejudice); *Campbell*, 364 F.3d at 730-31 (defendant did not demonstrate he was prejudiced by counsel's failure to request dismissal for alleged Speedy Trial Act violation because dismissal would have been without prejudice). Thus, Brown has failed to

39

demonstrate either prong of *Strickland* with regard to his claim that counsel provided ineffective assistance in failing to raise a challenge regarding Brown's speedy trial rights.

Further, the record does not support Brown's conclusory argument that counsel filed frivolous motions that unnecessarily delayed his trial. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy, and to point to the specific instances of deficient conduct. *Id*. Thus, a court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Here, Brown has not met his burden. First, Brown does not articulate which motions he alleges were frivolously filed and unnecessarily contributed to the delay of his trial. Further, he does not explain why the filing of any specific motion was not reasonable strategy. The Court's review of the record demonstrates counsel did not file any frivolous motions. Instead, Brown filed various motions seeking discovery (R. 369-72); a Motion to Suppress (R. 384), which was granted in part after an evidentiary hearing (R. 526); a Motion to Sever (R. 385), which was granted (R. 443); and a Motion *in Limine* (R. 561), which was still pending at the time Brown filed his Motion for Rearraignment. Brown has failed to establish counsel's decisions regarding what pretrial motions to file fell below an objective standard of reasonableness, and thus he fails to meet the first prong of *Strickland*. Further, as discussed above, Brown has not established that he suffered any prejudice as a result of any delay caused by counsel's decision to file these various motions.

## B.        Non-Ineffective Assistance of Counsel Claims

In Ground Three, Brown also asserts non-ineffective assistance of counsel claims. Specifically, Brown argues that the AUSA repeatedly sought and obtained superseding indictments as a delay tactic in violation of his statutory and constitutional rights to a speedy trial while she attempted to build a case against him and coerced him into pleading guilty.[18] (R. 886-1, at 14-17). While the Government did not specifically respond to these claims, the record demonstrates Brown's arguments lack merit. First, Brown has procedurally defaulted these claims by not presenting them in a direct appeal. In addition, even if not procedurally defaulted, his collateral attack on these claims is barred by the waiver provision in his Plea Agreement. Lastly, even if considered on their merits, the claims fail.

### 1.        Defendant has procedurally defaulted these claims

While claims of ineffective assistance of counsel in § 2255 motions are not procedurally defaulted when not first raised on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 504 (2003), failing to raise other substantive claims on direct appeal will generally result in a procedural default.[19] *Bousley v. United States*, 523 U.S. 614, 622 (1998). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise the

---

[18]To the extent Brown's Motion can be read to assert a claim of prosecutorial misconduct for making a threat to prosecute Brown's mother if he did not plead guilty, for the reasons explained in Section A(1)(c) above, Defendant has not established such conduct was improper under the circumstances of this case. Moreover, as discussed below, any such claim would be procedurally defaulted.

[19]Courts may consider the issue of procedural default *sua sponte*. *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000). While Brown has not yet presented argument on the issue of procedural default, he will be provided an opportunity to do so, via the filing of objections, prior to the presiding District Judge's decision. *See cf. Palmer v. Begley*, 330 F. App'x 92, 105 (6th Cir. 2009) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

arguments and . . . would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley*, 523 U.S. at 622); *see also Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

Here, Brown did not file a direct appeal. Thus, absent a showing of cause and prejudice or actual innocence, his failure to raise these claims on direct appeal results in a procedural default of those claims. *See Bousley*, 523 U.S. at 621. While Brown attempts to demonstrate his failure to file a direct appeal was caused by the ineffective assistance of counsel, as discussed above, his claim of ineffective assistance of counsel lacks merit.

Further, Brown has not demonstrated a credible claim of "actual innocence." To establish actual innocence, Brown must demonstrate that, in light of new evidence, it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995). While Brown makes conclusory statements that he was not involved in the conspiracy, he does not point to any evidence of actual innocence. Further, the evidence proffered by the Government demonstrates that it found a witness who was willing to testify as to Brown's involvement in making "many large scale drug purchases." (R. 930-1, at ¶ 10; *see also* R. 929, at 11). Thus, based on the record, Brown has not demonstrated a credible claim of actual innocence that would overcome his procedural bar. *See Emerson v. United States*, No. 07-cr-20403, 2015 WL 4546026, at *3 (E.D. Mich. July 28, 2015) (defendant failed to set forth new evidence that was unknown to defendant at time of his guilty plea and thus failed to present a credible claim of actual innocence); *Mainegra-Reyes v. United States*, No. 1:07-cr-119, 2013 WL 870591, at *7 (E.D. Tenn. Mar. 6, 2013) (defendant's failure to present any new evidence in attempting to establish his actual innocence is fatal to his claim). Accordingly, these claims are procedurally defaulted.

## 2.    Brown has Waived his Claim of Speedy Trial Violations

Even if Brown were found not to have procedurally defaulted these claims, they are barred by the waiver contained in the Plea Agreement.  In his Plea Agreement, Brown specifically waived his right to appeal and collaterally attack his guilty plea, conviction, and sentence, except that he reserved his right to appeal a sentence above 108-months.[20]  (R. 570, at ¶ 8).  A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction.  Here, Brown received a 108-month sentence, which has now been reduced to 87 months.  (R. 728; R. 1084).  Thus, Brown's claim that the Government deliberately violated his speedy trial rights is barred by the express terms of his Plea Agreement.

It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement provided that the waiver is knowing and voluntary.  *Hardin v. United States,* 595 F. App'x 460, 461-62 (6th Cir. 2014) ("[a] defendant 'may waive any right, even a constitutional right, by means of a plea agreement.'") (quoting *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)); *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004).  The Sixth Circuit has specifically held that a defendant's informed and voluntary waiver of his right to appeal and to collaterally attack extends to a claim that his right to a speedy trial was violated.  *See United States*

---

[20]The Government has not sought to enforce Brown's waiver of his right to collaterally attack his guilty plea, conviction and sentence contained in his Plea Agreement (*see* R. 570 at ¶ 8), presumably because not only do some of Brown's claims challenge the validity of the plea, but the Department of Justice announced a policy change on October 14, 2014, directing federal prosecutors not enforce waivers against claims of ineffective assistance.  *See* http://pub.bna.com/cl/DOJwaiverpolicy.pdf.  The Court has not enforced the waiver as to Brown's claims of ineffective assistance of counsel.  However, the Court has considered the waiver as to Brown's challenges to the Government's violation of his speedy trial rights and, as discussed above, finds the waiver effective.  *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012) (noting plea-agreement waivers are not jurisdictional and thus court not required to consider waiver *sua sponte*, but indicating it could do so if so inclined).  Nevertheless, out of an abundance of caution, the Court has also considered Brown's claims on the merits.

*v. Patino*, 150 F. App'x 453, 456 (6th Cir. 2005) (finding appellate waiver in plea agreement barred appeal claiming violation of Speedy Trial Act).

A waiver in a plea agreement is considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). The exception to this rule is where the collateral attack concerns the validity of the waiver itself. *Id.* (citing *Watson*, 165 F.3d at 489). In this case, Brown disputes the validity of his guilty plea, and arguably the waiver, arguing it was the product of coercion because of his counsel's ineffective assistance. However, as discussed above, Brown's claims of ineffective assistance of counsel lack merit.

Instead, as also discussed at length above, the totality of the circumstances supports a finding that Brown's plea and waiver were knowing and voluntary. Specifically, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, the presiding District Judge engaged Brown in a thorough plea colloquy. The presiding District Judge discussed the Plea Agreement with Brown, and Brown confirmed that he had reviewed the Agreement carefully with counsel and he understood it. (R. 873, at 9-10). Then the Court had the Government explain the Plea Agreement on the record, and the Court went over the Agreement with Brown. (*Id.* at 10-14). Importantly, Brown agreed the conducted attributed to him in paragraph 3 of the Plea Agreement was accurate. (*Id.* at 15). The Court also reviewed the statutory punishment for the lesser included offense of Count 2 requiring a mandatory minimum of five years and a statutory maximum of forty years, and Brown stated he understood. (*Id.*).

Moreover, the Court confirmed no one had threatened, forced or otherwise coerced Brown into signing the Plea Agreement or into pleading guilty. (*Id.* at 10). The Court also specifically

discussed Paragraph 8 of the Plea Agreement wherein Brown waived his right to appeal and collaterally attack his guilty plea, conviction and any sentence of 108 months or less, but preserved his right to appeal a sentence greater than 108 months:

> COURT:  Now, in Paragraph 8 of your plea agreement, it says that you are going to waive or give up your right to appeal or to file a separate lawsuit attacking your guilty plea and your conviction, and you have specifically reserved or preserved your right to appeal any sentence that might be greater than 108 months.
>
> So if I should sentence you to more than 108 months, you can take that to a higher court and challenge it, but if I sentence you to less than 108 months you won't be able to file an appeal.
>
> DEFENDANT:  Yes, Ma'am.
>
> COURT:  Do you understand that?
>
> DEFENDANT:  Yes, Ma'am.

(*Id*. at 17). Thus, the Court informed Brown of, and determined he understood, the scope of the Plea Agreement provision waiving his right to appeal or collaterally attack his guilty plea, conviction and any sentence of 108 months or less as required under Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure. The Sixth Circuit has held that complying with the provisions of Rule 11 is sufficient to demonstrate that a defendant entered into the waiver knowingly, voluntarily and intelligently. *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006). Thus, Brown's claim that the Government deliberately violated his constitutional or statutory right to a speedy trial is barred by the waiver of his right to collateral attack contained in his Plea Agreement.

### 3. Brown's Claims of Constitutional and Statutory Violations as a Result of Delay Lack Merit

45

### a.    Brown's voluntary guilty plea waived any speedy trial violation

Brown's claims that his speedy trial rights were violated are also barred by his voluntary and knowing guilty plea.[21]  "A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings," including the right to a speedy trial.  *See United States v. Dossie,* 188 F. App'x 339, 345 (6th Cir. 2006) ("a defendant who pleads guilty may not raise challenges based on denial of due process rights to a speedy trial") (quoting *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001)); *United States v. Dunning*, 94 F.3d 645, 1996 WL 464971, at *1 (6th Cir. 1996) (defendant's guilty plea waived Speedy Trial Act violations)*; see c.f. Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Since the right to a speedy trial, whether based on the Constitution or the Speedy Trial Act, is not jurisdictional, Brown waived his rights by knowingly and voluntarily entering his guilty plea.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (finding right to a speedy trial is not a jurisdictional issue and thus is waived by a guilty or nolo contendere plea).

### b.    Brown's claim that his constitutional right to a speedy trial was violated fails on the merits

Even if Brown's guilty plea did not waive his claim of a speedy trial violation under the Constitution, it fails on the merits.  The Sixth Circuit has explained the constitutional protections against excessive delay:

---

[21]As explained above, the Court finds Brown's plea was knowing and voluntarily entered.  Thus, this issue has been addressed and will not be discussed further in this section.

> Pre-indictment delay and post-indictment delay present separate issues. The former is governed by the Fifth Amendment, see *United States v. Rogers*, 118 F.3d 466, 475-76 (6th Cir. 1997), while the latter is a Sixth Amendment matter, see *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997). The Sixth Amendment right to a speedy trial does not come into play until "arrest, indictment or other official accusation." *Doggett v. United States*, 505 U.S. 647, 655, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

*United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009); *see also United States v. Crawford*, 60 F. App'x 520, 528-29 (6th Cir. 2003). Here, Brown's constitutional challenge to the delay in his trial is governed by the Sixth Amendment as the factual basis he sets forth relates to delays in the proceedings post-indictment. He makes no assertion of pre-arrest or pre-indictment delay, and thus has not established a Fifth Amendment violation caused by any delay.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[22] The Supreme Court of the United States has identified four factors to be weighed in evaluating a speedy trial claim under the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay, or "whether the government or the criminal defendant is more to blame for that delay"; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Chew*, 497 F. App'x at 558-59 (quoting *United States v. Young*, 657 F.3d 408, 413-14 (6th Cir. 2001) (citing *Barker*, 407 U.S. at 530)). "The first *Barker* factor–the length of the delay–serves as a threshold or 'triggering mechanism' for a speedy-trial analysis." *Chew*, 497 F. App'x at 558 (quoting *Young*, 657 F.3d at 414 (citing *Barker*, 407 U.S. at 530)). "A court need only consider the other *Barker* factors if there has been 'uncommonly long' delay." *Id*. The Sixth

---

[22]The Sixth Amendment does not impose a specific time limit to bring a defendant to trial. *See Barker v. Wingo*, 407 U.S. 514, 523 (1972) ("We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months").

Circuit has held that a delay of more than one year is presumptively prejudicial and triggers application of the remaining three factors. *Id.* (quoting *Young*, 657 F.3d at 414).

Here, Defendant was first indicted in this case on August 16, 2012. At the time of his guilty plea on April 5, 2013, his trial was scheduled to begin on April 11, 2013. Thus, the period of delay from indictment until the date his trial was set was just shy of 8 months.[23] While 8 months is not uncommon for a multi-defendant, complex conspiracy case, out of an abundance of caution, the Court will consider the other *Barker* factors, as there is authority that, in some circumstances, an 8-month delay is sufficient to trigger consideration of the other factors. *See Chew*, 497 F. App'x at 559 (stating that while less than 10 months does not seem "uncommonly long," authority exists that a delay of 8 months may be sufficient to trigger other *Barker* factors) (citing *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007)).

As to the reason for the delay, a review of the docket evidences that most of the delay was the result of the Court granting the unopposed motions for continuances of co-Defendants to provide them an opportunity to adequately prepare a defense. At Brown's August 23, 2012, arraignment on the First Superseding Indictment, a trial date was set for October 22, 2012. (R. 63). On October 3, 2012, a federal grand jury returned a Second Superseding Indictment, which added eleven new Defendants and additional charges against Brown. (R. 179). At Brown's October 11, 2012, arraignment on the Second Superseding Indictment, Magistrate Judge Wier continued the trial date to January 14, 2013, finding the continuance appropriate based upon: the unopposed motions to

---

[23]The Court has not considered the delay from the date of the Indictment in case number 5:12-0041-KKC, as that case has been dismissed and the similar charge brought in this matter was dropped by way of the Government eliminating that charge from the Second Superseding Indictment. (R. 179; 5:12-0041-KKC (R. 34)).

continue the trial date of Defendants Snow, Jones, and Thomas; the significant changes to the charges contained in the Second Superseding Indictment; the absence of co-Defendants; and finding the ends of justice were served by the continuance. (R. 210; R. 226).

On November 14, 2012, the presiding District Judge granted co-Defendant Jones's motion to continue the trial and set a new trial date of February 4, 2013, making appropriate ends-of-justice findings. (R. 304). On December 11, 2012, a federal grand jury returned a Third Superseding Indictment, but the February 4, 2013, trial date remained. (R. 337, 363). On January 24, 2013, the presiding District Judge granted the motions for continuance of trial of co-Defendants Hill and White, making appropriate ends-of-justice findings, and continuing the trial until March 25, 2013. (R. 412).

On February 27, 2013, the presiding District Judge granted Brown's Motion to Sever and set a scheduling conference to discuss the setting of Brown's trial date. (R. 443). On March 8, 2013, the District Judge set Brown's trial for April 15, 2013. (R. 458). On March 12, 2013, a federal grand jury returned a Fourth Superseding Indictment, however Brown's trial remained, as set, for April 15, 2013. (R. 472, 509). On March 20, 2013, the District Judge granted, in part, Brown's Motion to Suppress and on March 22, 2013, advanced his trial to April 11, 2013. Brown filed a Motion for Rearraignment on April 4, 2013, and on April 5, 2013, he entered a guilty plea.

Thus, a review of the record demonstrates that the changes in the trial date were made upon motion by various co-Defendants as well as Defendant's Motion to Sever. "Delay occasioned by the ends-of-justice continuance[s] cannot be blamed on the government," as they were requested by co-Defendants. *See Chew*, 497 F. App'x at 559. To the extent the continuances were indirectly caused by the filing of any of the superseding indictments, Defendant's conclusory allegations do not

49

demonstrate that any of the superseding indictments were groundless or brought in bad faith.  *Id*. Instead, as discussed above in Section A(3), the superseding indictments added Defendants, new charges, and expanded the conspiracy dates.  Thus, as in *Chew*, the second factor weighs in favor of finding no Sixth Amendment violation occurred.

Further, Defendant did not object to any delays or make any assertion of his speedy trial right until he filed the pending § 2255 Motion.[24]  The Supreme Court "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Barker*, 407 U.S. at 531-32. Since Brown never asserted his speedy-trial rights at any time prior to the pending Motion, the third factor also weighs in favor of finding no Sixth Amendment violation occurred.

With respect to the fourth factor, prejudice, the court is to assess the factor in light of the interests the speedy trial right was designed to protect.  *Id*. at 532.  The Supreme Court in *Barker* identified three of these interests:  (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id*.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  *Id*.

Here, while Brown suffered some prejudice by his pretrial incarceration and the anxiety that naturally flows from being charged with a crime, he has not demonstrated that the delay prejudiced his ability to prepare his case.  In fact, he has not provided any argument with respect to how he was

---

[24]On February 27, 2013, after granting Brown's Motion to Sever his trial, the presiding District Judge explained to Brown that he had a right to a speedy trial while discussing with him whether he wanted to participate at the scheduling conference to set his trial date.  (R. 445, at 159).  Brown waived his presence as the scheduling hearing, stating he trusted his counsel.  (*Id*.).  Despite having the opportunity to do so, Brown did not object to a possible continuance or otherwise assert his right to a speedy trial.  (*Id*.).

prejudiced by the delay. Accordingly, as Brown has not demonstrated or articulated any "actual, particularized and substantial prejudice" caused by the delay, this factor also weighs in favor of finding no Sixth Amendment violation occurred. *See Crawford*, 60 F. App'x at 528-29.

Thus, weighing the *Barker* factors, Defendant's Sixth Amendment right to a speedy trial was not violated. While there was delay, it was mostly caused by the complexity of the case and co-Defendants' requests for continuances to adequately prepare a defense. Contrary to Defendant's argument, no significant delay was directly attributed solely to the filing of the superseding indictments. Further, Defendant did not assert his right to a speedy trial during the pre-trial proceedings, and did not raise an objection to any of the requested continuances or ends-of-justice findings. Nor has Defendant articulated any specific prejudice or demonstrated that the delay curtailed his ability to prepare his case. Accordingly, Defendant has not established that the AUSA's seeking and obtaining superseding indictments violated his Sixth Amendment right to a speedy trial as alleged.

### c.    Defendant's claim that his statutory right to a speedy trial was violated also lacks merit

Brown also argues that the Government's repeated filing of superseding indictments as a delay tactic violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). The Speedy Trial Act requires a trial to commence within 70 days of an indictment or initial appearance, whichever is later, but contains many exclusions that stop the speedy trial clock. *See* 18 U.S.C. § 3161(c)(1), (h); *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011) (quoting 18 U.S.C. § 3161(h)(1)(D)). Notably, one of the events that has an effect on the speedy trial clock is the filing of a pretrial motion, which stops the clock "from the filing of the motion through the conclusion of the hearing on, or other prompt

disposition of, such motion." *See* 18 U.S.C. § 3161(h)(1)(D). Further, where there are multiple defendants, one speedy trial clock governs unless and until a severance is granted. *United States v. Smith*, 510 F. App'x 390, 393-394 (6th Cir. 2013) (citing *United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002)).

Here, a thorough review of the docket reveals no Speedy Trial Act violation occurred because the non-excludable time did not exceed 70 days. Although Brown was charged in the First Superseding Indictment on August 16, 2012, and was arraigned on August 23, 2012, the speedy trial clock did not begin to run until September 18, 2012, the arraignment of the last co-Defendant. (R. 149). *See Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986); *Coviello v. United States*, 287 F. App'x 503, 506 (6th Cir. 2008) (speedy trial clock begins upon the arraignment of the last defendant).

However, after the clock started, it stopped on September 27, 2012, as to all Defendants when co-Defendant Morbley filed a Motion for Rearraignment (R. 165). *See Coviello*, 287 F. App'x at 507 (6th Cir. 2008) (finding the time from co-defendant's notice of change of plea to the rearraignment proceeding is excludable time as to the defendant); *United States v. Culpepper*, 898 F.2d 65, 68 (6th Cir. 1990) (same). As of September 27, 2012, 8 days had run on the speedy trial clock–counting as nonexcludable time the date of the co-Defendant Morbley's filing and excluding one day because of the filing and granting of a Motion for Protective Order. (R. 157; R. 158); *see Coviello*, 287 F. App'x at 507 (date of motion filing is not excluded unless it is also the date an order was entered resolving the motion).

Soon thereafter, additional co-Defendants filed motions for rearraignment. (R. 166; R. 167; R. 171; R. 177). While the motions for rearraignment were being considered and set for hearings,

52

the Second Superseding Indictment was filed on October 3, 2012, adding new Defendants to the case but deleting those co-Defendants with pending rearraignment hearings.[25]  (R. 179).  Thus, arguably the clock began again on October 3, 2012, since Brown was no longer "joined for trial" with the co-Defendants who were not named in the Second Superseding Indictment, and thus the delays attributed to their change of plea would no longer apply to Brown's speedy trial clock.  *See Coviello*, 287 F. App'x at 508.

On October 8, 2012, co-Defendant Snow filed a Motion to Continue Trial, which was followed by similar motions of other co-Defendants.  (R. 192; R. 195; R. 199).  This Motion again stopped the speedy trial clock with 6 additional days arguably counting as non-excludable time–for a total of 14 days.  On October 15, 2012, the Court granted co-Defendants' Motions to continue the trial, making appropriate ends-of-justice findings, and resetting the trial of the matter for January 14, 2013.  (R. 226).  Upon the Court's ends-of-justice findings, the speedy trial clock was tolled until January 14, 2013.  *See Coviello*, 287 F. App'x at 509 (finding court's order continuing trial upon making ends-of-justice findings tolled speedy trial clock from date of order until new trial date); *United States v. Chavis*, No. 2:15-cr-214, 2016 WL 368060, at *1 (S.D. Ohio Jan. 29, 2016) (same).

On October 17, 2012, co-Defendant Jones filed a Motion to Continue Trial, which the Court granted, again making ends-of-justice findings and rescheduling the trial to February 4, 2013.  (R. 235; R. 304).  Thus, the speedy trial clock continued to be tolled until February 4, 2013.[26]

---

[25]While the Second Superseding Indictment could have restarted the speedy trial clock because it added new defendants to the case, *see Sylvester v. United States*, 110 F. Supp. 3d 738, 747 (E.D. Mich. 2015), for purposes of this analysis, the Court will assume arguendo that none of the superseding indictments restarted the speedy trial clock.

[26]Further, the parties were filing pretrial motions that would also have the effect of tolling the speedy trial clock.

On December 11, 2012, the Third Superseding Indictment was returned, and the trial remained as set on February 4, 2013. (R. 337). On December 21, 2012, Defendant Brisco filed a Motion to Continue the Trial Date, explaining the continuance was needed because of the voluminous discovery materials, a pending motion to suppress, the new charges added against him in the Third Superseding Indictment, and the complexity of the case. (R. 368). On January 21 and 23, 2013, two other co-Defendants also moved for a continuance of the trial date; one specifically stating the continuance was necessary because discovery was ongoing. (R. 399; R. 405). On January 24, 2013, the Court granted the Motions to Continue Trial and rescheduled the trial for March 25, 2013, making the required ends-of-justice findings. (R. 412). Thus, the speedy trial clock continued to be tolled until the new trial date of March 25, 2013. Brown did not object to any of the continuances or the ends-of-justice findings. Nor does he argue in his § 2255 Motion that the ends-of-justice continuances were in anyway improper.

On February 27, 2013, Brown's case was severed from his co-Defendants, and his trial was set for April 15, 2013. (R. 443; R. 458). Brown's severance from the other Defendants meant that as of that date, he was no longer joined for trial with others and excusable delay as to his co-Defendants would not longer affect his speedy trial clock. *See Coviello*, 287 F. App'x at 508 (setting individual trial date for defendant meant co-defendant's actions no longer affected defendant's speedy trial clock). However, Brown's speedy trial clock did not restart on February 27, 2013, because his suppression motion was under advisement by the Court. *See* 18 U.S.C. § 3161(h)(1)(H).

On March 20, 2013, the Court granted, in part, Brown's Suppression Motion and advanced his trial date to April 11, 2013.[27]  (R. 526; R. 534).  This ruling restarted his speedy trial clock.

On April 1, 2013, Brown filed a Motion *in Limine*, which stopped the clock.  (R. 561).  On April 4, 2013, Brown filed his Motion for Rearraignment, and he entered his guilty plea on April 5, 2013.  From the time his clock started on March 21, 2013, until his plea was accepted on April 5, 2013, an additional 12 days ran off his speedy trial clock.  Thus, even under the most conservative count, at the time of Brown's guilty plea, there were 26 days of non-excludable time.[28]

Moreover, even if a Speedy Trial Act violation had occurred, Brown's argument would fall under the waiver provision contained in that statute.  Specifically, the Speedy Trial Act provides that a defendant's failure to move for dismissal under the Act prior to trial or entry of a guilty plea constitutes a waiver of his right to dismissal on that ground. § 3162(a)(2); *Zedner v. United States*, 547 U.S. 489, 502-03 (2006) (precluding prospective waivers of Speedy Trial Act, but noting the validity of the retrospective-waiver provision contained in the Act); *Brown*, 498 F.3d at 529-30 (concluding that defendant's Speedy Trial Act claim was waived because it was not raised before trial).  Thus, even if a Speedy Trial Act violation occurred, Defendant waived any claim for dismissal on that ground by not seeking dismissal on the basis of a speedy trial violation prior to his guilty

---

[27]In the evidentiary hearing on Brown's Motion to Suppress, the presiding District Judge stated she would grant Defendant's Motion to Sever as unopposed and would set a scheduling conference.  (R. 445, at 158-59).  The presiding District Judge asked Brown if he had any objection to her holding the scheduling conference with counsel only, and Brown stated he did not object.  At that time, the Court explained he has a right to a speedy trial and counsel may ask during that conference for additional time to prepare, and Brown responded that he gave his permission to hold the conference without him because he trusted his counsel. (*Id.* at 159).

[28]The Court did not take into account the numerous other motion filings, pretrial conferences and hearings that may also provide alternative grounds for stopping the clock.

plea. Accordingly, Brown's claim that the Government's use of superseding indictments violated the Speedy Trial Act lacks merit.

### C.    Evidentiary Hearing

The Court held a limited evidentiary hearing in this matter on Brown's claim of ineffective assistance of counsel for failure to file a notice of appeal. (R. 1066). While Brown seeks a further evidentiary hearing as to his other claims, the record conclusively demonstrates he is not entitled to relief on those claims. Specifically, his remaining claims are contradicted by the record, inherently incredible, or are conclusions rather that statement of facts. *Briggs v. United States*, 187 F. App'x 540, 542 (6th Cir. 2006) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Thus, no further hearing is necessary.

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.    Defendant Mark Edmond Brown's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255 (R. 886) be **denied;**

2.    a certificate of appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

3.    Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and

4.    this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may

serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.

**In this case specifically, Brown and his newly-appointed counsel, Richard R. Melville, should note that Attorney Melville's appointment is limited to Brown's claim that trial counsel provided ineffective assistance in failing to file a notice of appeal despite Brown's instructions to do so.** (R. 1030; R. 1191). **Consequently, Attorney Melville's efforts in filing any objections to this Report and Recommendation are limited to this sole issue. To the extent Defendant Brown wishes to object to any other portions of this Report and Recommendation, he must do so *pro se*.**

Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Finally, because Attorney Melville has been appointed to represent Brown on only his claim that trial counsel provided ineffective assistance by failing to file a notice of appeal, and thus Brown will be responsible for timely filing any objections with regard to his other claims, the Clerk is directed to send a copy of this Report and Recommendation to **both** Attorney Melville and Defendant Brown.

Dated this 20th day of July, 2016.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

I:\DATA\habeas petitions\evidentiary hearing\12-79-KKC R&R.final.Brown.wpd